1999 OK 71

**The CITY OF OKLAHOMA CITY, a municipal corporation, Plaintiff–Appellee,**

v.

**The OKLAHOMA CITY URBAN RENEWAL AUTHORITY, a public body corporate; Bricktown Parking Investors, L.L.C., an Oklahoma limited liability company; and Bricktown TMK/Hogan Entertainment, L.L.C., an Oklahoma limited liability company, Defendants–Appellees,**

v.

**Moshe Tal, Lisa (Michelle) Bowers, Dr. John Miglaccio, Steve Miglaccio, Joy Parker, Physilla (Jo) Polley, Edna (Ennise) Richardson, Morning-Star Takapu, Robby (James) Lovett, W.D. Mcgown, and Michael (Lawrence) Toms, individually and as an association known as Taxpayers Against Ripoffs ("T.A.R."), Appellants.**

No. 92,874.

Supreme Court of Oklahoma.

Aug. 30, 1999.

As Corrected Sept. 1, 1999.

Rehearing Denied Sept. 30, 1999.

William O. West, Municipal Counselor, and David Brummitt, Assistant Municipal Counselor, for Appellee, City of Oklahoma City.

Dan Batchelor and Janis Powers, Batchelor and Powers, Oklahoma City, Oklahoma, for Appellee, Oklahoma City Urban Renewal Authority.

Melvin R. McVay, Jr., Robert N. Sheets, Heather L. Hintz, and Ellen K. Spiropoulos, Phillips, McFall McCaffrey, McVay & Murrah, Oklahoma City, Oklahoma, for Appellees, Bricktown Parking Investors, L.L.C.

and Bricktown TMK/Hogan Entertainment, L.L.C.

Bryce S. Kennedy, Jr., Kennedy & Associates, Enid, Oklahoma, for Appellants.

## OPINION

WATT, Justice.

¶ 1 This is an appeal from the order of the District Court of Oklahoma County, Honorable Karl Gray, District Judge, denying the motion to intervene and motion for continuance of Moshe Tal and others, who call themselves "an association known as Taxpayers Against Ripoffs ('T.A.R.')." Appellants appeal from the trial court's order. Tal is an unsuccessful bidder for the Redevelopment Agreements on the MAPS Bricktown Redevelopment Project, which Agreements were ultimately awarded to appellees, Bricktown Parking Investors and TMK/Hogan.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On January 12, 1999 Tal, and the other members of T.A.R., signed a Written Demand, which was delivered to the City Clerk of appellee, City of Oklahoma City pursuant to 62 O.S.1991 §§ 372 and 373.[1] Sections 372 and 373 provide that if, after written demand is made by ten resident taxpayers, a public body fails to prosecute proceedings to recover money or property belonging to the public body, which the taxpayers claim was unlawfully or fraudulently obtained, any resident taxpayer may sue in the name of the state to recover the money or property plus treble damages from the officials responsible for the wrongful acts; the taxpayer will be entitled to one-half the money or one-half the value of the property recovered. Such an action is known as a *"Qui tam"* action, that is "An action brought on a penal statute by an informer, who sues for the penalty ..." *The Oxford English Dictionary on CD–ROM* (2d Ed.1994).

¶ 3 Appellants' Demand alleged that certain Development Agreements, to which Oklahoma City was not a party, and which had been entered into between the Oklahoma City Urban Renewal Authority, Bricktown Parking Investors, and TMK/Hogan Entertainment, were unlawful. Appellants de-

---

1. Title 62 O.S.1991 § 372 provides:

   Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided.

   Title 62 O.S.1991 § 373 provides:

   Upon the refusal, failure, or neglect of the proper officers of the state or of any county, township, city, town, or school district, after written demand made upon them by ten resident taxpayers of the state or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the state or such county, township, city, town, or school district affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half (½) the amount of money and one-half (½) the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward.

manded that Oklahoma City file a lawsuit to declare the Development Agreements void and to recover certain property that Oklahoma City had conveyed to the Urban Renewal Authority. The record reflects that Moshe Tal had enlisted the support of the other signatories of the Demand, the members of the T.A.R. association.

¶ 4 In response to appellants' Demand, Oklahoma City filed a declaratory judgment action against the Urban Renewal Authority, Bricktown Parking Investors, and TMK/Hogan on January 16, 1999. Oklahoma City asked for a declaration that the Development Agreements were lawful and, alternatively if the court should decide that Development Agreements were unlawful, that the court order the Urban Renewal Authority to return the property that Oklahoma City had conveyed to it. Notice of the suit was given to T.A.R.'s attorney. On January 17, 1999, Bricktown Parking Investors filed its Answer, Counterclaim and Cross Claim, and TMK/Hogan filed its answer. On February 3, 1999, upon stipulation of the parties, the trial court entered an order setting the matter for non-jury trial on March 1, 1999.

¶ 5 On February 22 and 23, 1999, defendants took the depositions of appellants, T.A.R. members, Moshe Tal, Lisa Bowers, W.D. McGown, Joy Parker, Pyhsilla Jo Polley, Edna Ennise Richardson, Morning–Star Takapu, Michael Toms, and Steve Migliaccio. Appellants' attorneys appeared at each of the depositions. Tal's deposition was 129 pages long. After the trial had commenced, appellants' attorney filed a motion to intervene and for continuance. The trial court, after argument of counsel, considering the depositions of Tal and the other T.A.R. members who had been deposed, and also considering T.A.R.'s Written Demand, denied T.A.R.'s motion to intervene.

¶ 6 Tal and the other T.A.R. members appealed from the trial court's ruling. The appellees then filed motions that this Court retain jurisdiction and treat the appeal on an expedited basis. We granted the appellees' motions. Appellees also moved to dismiss appellants' appeal, which motion we reserved for disposition to the decisional stage of the appeal. As a consequence of the result of this appeal appellees' motions are moot.

¶ 7 After the disposition of T.A.R.'s motion to intervene, the case was tried on the merits and the trial court found that the Agreements were lawful and entered a mandatory injunction, which requires that the Urban Renewal Authority carry out the terms of the Agreements between itself and the developers, Bricktown Parking Investors and TMK/Hogan. The record of the trial was made a part of the record on appeal here.

¶ 8 The Urban Renewal Authority represents that the developers are relying on their ability to raise money from third party investors and lenders, and upon the participation of a company to commit to build a theater complex in the area. According to the Urban Renewal Authority, the pendency of this appeal has meant that the parties to this litigation have been unable to satisfy the requirements of these third parties, which inability has prevented the them from funding the design and letting a construction contract to carry out improvements to the Bricktown Canal, which failure prevents the Urban Renewal Authority from complying with the requirements of the mandatory injunction. The completion of these improvements are conditions precedent to the development of the Bricktown entertainment complex.

*The MAPS Project and the Bricktown Development Plan*

¶ 9 Some background concerning the MAPS project and the development of the Bricktown area are necessary for a thorough understanding of the issues in this case. The conveyance from Oklahoma City to the Urban Renewal Authority and the Development Agreements between the Urban Renewal Authority, Bricktown Parking Investors, and TMK/Hogan were carried out as part of the Oklahoma City Metropolitan Area Projects program, known as "MAPS." The MAPS project began with a one-cent sales tax increase, which the voters of Oklahoma City approved in 1993. The MAPS sales tax produced $300,000,000.00 to be used in the construction of new projects, including the

Bricktown Ball Park, the Bricktown Canal, and the renovation of existing structures, such as the Myriad Convention Center.

¶ 10 One of the MAPS program's primary purposes is to attract private investors to invest in the areas being developed as part of the program. To this end, Oklahoma City's City Council passed a Redevelopment Plan for the Bricktown area in 1997. The Redevelopment Plan was designed to attract private investors to build sports related parking and entertainment related improvements. Appellant Moshe Tal was the leader of one group of investors who sought the contracts to carry out the Redevelopment Plan but the City Council, after widely publicized hearings and based on an extremely close vote, ultimately awarded the Development Agreements to Bricktown Parking Investors and TMK/Hogan rather than to Tal's group. The final decision was made by the City Council only after two years of public meetings, public notices, public hearings, and citizen review.

¶ 11 Oklahoma City had conveyed property it had acquired in the area to the Urban Renewal Authority with the proviso that Oklahoma City would receive the net proceeds from the sale of the property by the Urban Renewal Authority and that the price paid to the Urban Renewal Authority for the property would "be not less than the actual 'fair market value' of said property." The property was appraised on three separate occasions by professional appraisers before it was sold. The trial court found and the record supports that the Urban Renewal Authority received fair market value for the property.

¶ 12 T.A.R. also complained that the Agreements failed to serve a public purpose and provided insufficient safeguards and accountability to the Urban Renewal Authority and Oklahoma City. The trial court held that the Agreements did provide for adequate accountability and safeguards.

¶ 13 After receiving the property and in furtherance of the redevelopment plan, the Urban Renewal Authority made Development Agreements with Bricktown Parking Investors and TMK/Hogan. Under its Agreement with the Urban Renewal Authori-

ty, TMK/Hogan will purchase a development site at its fair market value of about $3.3 million and develop the Bricktown entertainment Center at an estimated cost of over $30 million. Bricktown Parking Investors agreed to develop 1,200 parking spaces, subject to the later relocation of the parking to another site in order to make room for the development of the Entertainment Center.

## ISSUE

¶ 14 There is but a single, narrow issue in this case: Did the trial court err in denying T.A.R.'s motions to intervene and for continuance? We hold that the trial court correctly denied T.A.R.'s motions.

## DISCUSSION

¶ 15 The right of one to intervene in litigation to which he is not a party is governed by 12 O.S.1991 § 2024.B.2, which authorizes a court to allow permissive intervention only under the following circumstances:

> When an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Tal and T.A.R. do not claim that T.A.R. was entitled to intervene as of right. Their claim is that the trial court erred in not allowing T.A.R. to intervene on a permissive basis under § 204.B.2.

¶ 16 As previously noted, Tal and T.A.R. formulated their motion to intervene as a *qui tam* action under 62 O.S.1991 §§ 372 and 373, which started with T.A.R.'s "Written Demand" in which it claimed a right to a reward of one-half of any amounts recovered.

Under the record, T.A.R. was not entitled to intervene as a *qui tam* plaintiff.

*I.   T.A.R. failed to show that Oklahoma City had acted in bad faith. Such a showing is a prerequisite to any right to intervene.*

¶ 17   Taxpayers may intervene in an action brought by a public body only if the public body fails to respond to a written demand with action taken in good faith. *Braly v. Ford,* 1941 OK —— 116 P.2d 988. Whether that burden has been met is left to the sound discretion of the trial court. *Tulsa Rock Co. v. Williams,* 1982 OK 10 ¶ 5, 640 P.2d 530.

¶ 18   T.A.R. claims that Oklahoma City's suit was non responsive to T.A.R.'s Demand because Oklahoma City failed to support T.A.R.'s claims. We hold that Oklahoma City was not required to do so. In *Braly* we held

> Public officers are always presumed, in the absence of any showing to the contrary, to be ready and willing to perform their duty; and until it is made to appear that they have refused to do so, or have neglected to act under circumstances rendering this equivalent to a refusal, there is no occasion for the intervention of the citizen for the protection of himself and others similarly situated.

116 P.2d at 990 (Citation omitted.)

¶ 19   T.A.R. claims that *Braly* is distinguishable from the facts in the case at bar but we find this claim unconvincing. T.A.R. relies on *State ex rel. Lockhart v. Board of Com' rs of Lincoln County,* 1946 OK ——, 197 Okla. 605, 173 P.2d 725. There we held that allegations of fraud were sufficient to state a cause of action. But *Lockhart* involved the question of what is required at the pleading stage to successfully resist a demurrer to the petition being sustained. Here the issue is much different from the issue involved in *Lockhart.* The case has been tried and the record developed supports the trial court's finding that the property at issue was sold at its fair market value and that the protections for the public to safeguard its interests spelled out in the Agreements were adequate. This ends the inquiry and T.A.R.'s expression of a contrary opinion in its Demand, without factual support, does not change the result.

¶ 20   T.A.R. would have us reverse the presumption of good faith to which Oklahoma City is entitled and assume that, without T.A.R.'s intervention, Oklahoma City would act in bad faith. In any event, there is nothing in the record to reflect that Oklahoma City acted in bad faith. Its actions were taken under the glare of public scrutiny and were resisted by a significant minority of the City Council. That the disagreements among Council members were resolved in a way that Tal and the other T.A.R. members do not like does not support in any way T.A.R.'s claim that the Development Agreements were either fraudulent, unlawful, or otherwise inadequate.

¶ 21   That a more attractive deal for Oklahoma City might have been made, as T.A.R. asserts it could and should have been made, is not for this Court's consideration. Such issues were for the City Council and the City Council resolved them. There being no showing of fraud or unlawful activity here, T.A.R. lacks standing to attack the City Council's decisions.

¶ 22   Tal claims that the failure of the trial court to allow him to intervene and hear his testimony was prejudicial to his rights and those of T.A.R. We note, however, that the trial court considered Tal's 129 page deposition and Tal does not suggest that there are any facts to support his claims of unlawfulness beyond those contained in the allegations in T.A.R.'s Demand. The trial court read and considered T.A.R.'s Written Demand and the depositions of all its members. It is obvious that the trial court concluded that the factual allegations in T.A.R.'s Demand and the deposition testimony of its members were insufficient to support T.A.R.'s claim for intervention. For the reasons previously discussed, we agree.

¶ 23   Because we conclude that Moshe Tal's petition for intervention was correctly denied, he stands excluded as a party litigant below and has no standing to tender for our review any errors made by the trial court.

II. *Oklahoma City' s action against the Urban Renewal Authority, Bricktown Parking Investors, and TMK/Hogan was a justiciable case or controversy.*

¶ 24   T.A.R. contends that Oklahoma City's action against the Urban Renewal Authority, Bricktown Parking Investors, and TMK/Hogan was not a justiciable case or controversy because the parties agreed that the Development Agreements were valid.  In support of its claim on this issue T.A.R. cites *Gordon v. Followell*, 1964 OK 74, 391 P.2d 242.  *Gordon*, however, does not support T.A.R.'s claim.  There we said, "We therefore hold that the petition was insufficient to invoke the jurisdiction of the court under the declaratory judgments act." *Gordon*, 1964 OK 74 at ¶ 10 391 P.2d 242.

¶ 25   T.A.R. claims that Oklahoma City's allegation that the Development Agreements were lawful meant that there was not an actual case or controversy because the parties did not have opposing interests.  This Court has not previously addressed this issue.  The Supreme Court of Wyoming, however, did so in *Brimmer v. Thomson*, 521 P.2d 574 (Wyo.1974).

¶ 26   In *Brimmer*, the Wyoming Attorney General brought a declaratory judgment action under that state's version of the Uniform Declaratory Judgment Act, which was substantially similar to the Oklahoma version of the Act. The Attorney General and some of the defendants, state senators who were prospective candidates for governor, agreed that the defendants were eligible for the office of governor.  The suit was brought because an earlier Attorney General's opinion had questioned the eligibility of the candidates.  The Wyoming court held that the declaratory judgment action presented an actual case or controversy because the question created by the earlier Attorney General's opinion as to the eligibility of the candidates supplied the necessary adversity.  The fact that the plaintiff and some of the defendants were in agreement did not change the determination that an actual case of controversy existed.

¶ 27   To the same effect as *Brimmer* see *State ex rel. Miller v. State Board of Education*, 56 Idaho 210, 52 P.2d 141, 143 (1935). There the Idaho Supreme Court held that the public importance of the issue supported plaintiff's claim that there was an actual case or controversy despite the fact that there was no disagreement between the parties. In *New Jersey Power & Light Company*, 45 N.J. 237, 212 A.2d 136, 139 (1965) the court held that a declaratory judgment was valid, although both plaintiff and defendant believed the contract at issue to be valid.

¶ 28   We agree with the analysis of the Wyoming, Idaho, and New Jersey courts. Applying the reasoning of their opinions here, we hold that the an actual case or controversy arose here as a result of the threat created by T.A.R.'s claims that the Development Agreements were fraudulent or otherwise unlawful.  This conclusion is not altered by the fact that the parties to the declaratory judgment action all believed the Agreements to be valid.  Thus, a justiciable case or controversy was presented to the trial court for resolution.  When Oklahoma City filed its declaratory judgment action, it placed in issue T.A.R.'s contentions for resolution by an unbiased court.  T.A.R. was entitled to no more.

¶ 29   T.A.R. does not claim that Oklahoma City's suit against Bricktown Parking Investors and TMK/Hogan was collusive or fictitious.  In any event, the record would not support such a conclusion.  The allegations by all parties that the Agreements were lawful did not deprive Oklahoma City's action of its justiciable character.  The agreement among Oklahoma City and the other parties as to how the issues should be resolved was appropriate.  Those issues were legitimate, not feigned or collusive.  The burden was on T.A.R. to prove that the matter was nonjusticiable and it did not do so.  *Application of Goodwin*, 1979 OK 106 ¶ 4, 597 P.2d 762.

¶ 30   In *Goodwin* we held that, in the absence of a showing of fraud or collusion, the appeal of a suit between parties who were in agreement concerning the issues was justiciable despite the fact that the appellee failed to file an answer brief.  The trial court heard T.A.R.'s arguments and read the depositions of its members before ruling on T.A.R.'s motion to intervene.  This fact and the *Goodwin* opinion demonstrate that the

trial court's order denying Tal's motion to intervene did not deprive Oklahoma City's action of its justiciable character.

## CONCLUSION

¶ 31   T.A.R. was not entitled to intervene in Oklahoma City's declaratory judgment action because Oklahoma City was representing the rights of all its taxpayers and was entitled to the presumption that it would do so in good faith.   T.A.R. failed to overcome this presumption.   Further, T.A.R. made no claim and the record would not support that Oklahoma City's suit was collusive or fictitious.   Thus, the trial court did not err in denying both T.A.R.'s motion to intervene and its motion for continuance.

JUDGMENT OF THE TRIAL COURT AFFIRMED

HARGRAVE, V.C.J., and HODGES, LAVENDER, OPALA, and KAUGER, JJ., concur.

SUMMERS, C.J., concurs in result.