2011 OK 1

CITY OF BROKEN ARROW, Oklahoma, a Municipal Corporation, Plaintiff/Appellee,

v.

BASS PRO OUTDOOR WORLD, L.L.C.; Phil Roland; Roland Investments, Ltd.; Stone Wood Hills BP, L.L.C.; and Bank of America, N.A., Defendants/Appellees,

and

State of Oklahoma, ex rel. Karen Franklin, a resident taxpayer of the City of Broken Arrow, State of Oklahoma, Intervenor Defendant, Counterclaimant, and Cross–Petitioner/Appellant,

v.

Bass Pro Outdoor World, L.L.C.; Phil Roland; Roland Investments, Ltd.; Stone Wood Hills BP, L.L.C.; Bank of America, N.A., and City of Broken Arrow, Oklahoma, a municipal corporation, Third–Party Defendants/Appellees.

No. 104,015.

Supreme Court of Oklahoma.

Jan. 18, 2011.

As Corrected Jan. 19, 2011.

Rehearing Denied April 11, 2011.

Terry Guy Shipley, Norman, OK, and Larry R. Steidley, Jr., Claremore, OK, for Appellant.

Beth Anne Wilkening and R. Haydon Downie, Broken Arrow, OK, for City of Broken Arrow.

Bob L. Latham, Jr., Lance Freije, Laura E. Samuelson, and Allison L. Thompson of Latham, Wagner, Steele & Lehman, P.C., Tulsa, OK, for Appellee Bass Pro Outdoor World, L.L.C.

Joe E. Edwards of Day, Edwards, Propester & Christensen, P.C., Oklahoma City, OK, for Appellee Bank of America, N.A.

Lawrence D. Taylor, Tulsa, OK for Appellees Phil Roland, Roland Investments, Stone Wood Hills BP, L.L.C.

EDMONDSON, J.

¶ 1 This case involves an attempt by a *qui tam* taxpayer to intervene in a declaratory judgment action which was brought by officials in response to the *qui tam* demand and notice. The taxpayer challenged the City's expenditure of funds for an economic development project which involved construction and location of a sporting goods store, Bass Pro, in the City of Broken Arrow. The construction had been completed and Bass Pro operating the business for approximately ten months at the time of the hearing in the trial court on Taxpayer's motion to intervene and City's motion for summary judgment. We hold that the record on appeal shows that the City adequately presented Franklin's (or Taxpayer's) claims in the declaratory judgment proceeding and we affirm the order denying the motion to intervene.

¶ 2 In 2004, Stone Wood Hills BP, L.L.C. (Stone Wood) entered into a lease agreement with Bass Pro Outdoor World, L.L.C. (Bass Pro) for rental of a building to be constructed on approximately 19.15 acres in the city of Broken Arrow, Tulsa County, Oklahoma. Stone Wood and Bank of America, N.A. (Bank of America) agreed to a Construction and Term Loan Agreement for non-recourse financing in the amount of 20.3 million dollars. Then the City of Broken Arrow approved Resolution No. 379 which authorized the acceptance of an assignment of the lease from Stone Wood, an assumption of the indebtedness created by the loan agreement, and acceptance of the real property on which the Bass Pro store would be located.

¶ 3 Pursuant to a Sales Tax Pledge Agreement, the City acknowledged that the City is to pay Bank of America, when due, all debt service as defined in the loan agreement and pledges revenues from a municipal sales tax levied by City Ordinance No. 432. The Sales Tax Pledge Agreement states that the City cannot become obligated beyond its fiscal year and that the pledge of revenues and covenants are on a year-to-year basis renewed for an additional year on July 1st of each year.

¶ 4 Approximately two years after the City of Broken Arrow publicly approved the project, the City Clerk for the City of Broken Arrow received a "Demand" from taxpayers requesting that the City prosecute an action to recover certain property and rescind certain contractual obligations. The Demand alleged that the actions of the City were in violation of the Oklahoma Constitution, Open Meeting Act (25 O.S. §§ 301–314), Competitive Bidding Act (61 O.S. §§ 101–138), anti-fraud statutes, and that they also constitute common law fraud.

¶ 5 Constitutionally, Taxpayer argued that the City's assumption of the promissory note in the amount of $20,300,000.00 and certain contractual obligations violated Article 10 § 35. They argued that the automatic renewal of the City's annual appropriations of sales tax violated Art. 10 § 26. Taxpayer also argued that using sales tax proceeds for the purpose of economic development violated Article 10 § 19.

¶ 6 The City filed a petition for declaratory judgment in the District Court for Tulsa County. The City's petition stated that all transactions at issue relating to Resolution No. 379 were performed in compliance with the Oklahoma Open Meeting Act and the Competitive Bidding Act. The City asserted that none of its acts violated 15 O.S. §§ 58–59, or were fraudulent conveyances, or amounted to common law fraud. The City pled that Art. 10 § 35 was not applicable to the transactions, that approval of the electorate was not necessary, and "nor was it required that the debt be publicly bid." Similarly, the City pled that Art. 10 § 26 did not apply because the pledge of tax revenues was on a year-to-year basis. The City pled that economic development was a proper function of a municipality and Art. 10 § 19 was not applicable. The City requested a declaratory judgment that the assumption of the agreement, Sales Tax Pledge Agreement, Special Warranty Deed, and assignment and assumption of lease were all lawful. The City

then requested, "In the event any of the subject transactions are found to be unlawful or fraudulent as contemplated by the provisions of 62 O.S. § 372 or § 373, the City prays that the Court will award all such reasonable relief as the City may be entitled." Twenty-nine days later the City filed an amended petition for declaratory judgment, and the following day filed a motion for summary judgment requesting a judgment that the City's actions were lawful.

¶ 7 Prior to the scheduled date to hear the City's motion for summary judgment, Taxpayer sought to intervene in the declaratory judgment action. She alleged that although she had requested the City to bring an action to recover money and property, the City was seeking to have the transactions at issue confirmed and validated by the District Court. She alleged that the City could not be expected to diligently prosecute an action to recover the property. She also alleged that her intervention was necessary to challenge the allegations made by the City.

¶ 8 The City objected to the intervention. It argued that it had requested a judgment to confirm the validity of the transactions as well as alternative relief in that "the City pled that if the transactions were found to be unlawful or unconstitutional, that the Court would award all such relief as it might be entitled to." The City argued that Taxpayer's allegations had no basis in fact or were not material to the transactions at issue, and that its transactions did not violate the Oklahoma Constitution. The City also relied upon 62 O.S.2001 § 374 [1] and claimed that Taxpayer's Demand was untimely. The City's objection states that "The above-identified responses clearly resolve every question of fact and law presented by taxpayer in her proposed Answer, Counter–Claim and Cross–Petition." O.R. at 749. The City ref-

erenced its motion for summary judgment and the arguments made therein.

¶ 9 The motion for summary judgment argued that no question of fact existed and that the City was entitled to a judgment adjudicating the transactions as lawful and "[f]or all other relief as this Court deems just and equitable." O.R. at 86. The City stated that Taxpayer's Demand and Amended Demand alleged that the City Council had been " 'duped' . . . into authorizing the assumption of the contractual lease obligations to Bass Pro and the construction financing debt to Bank of America." The City stated that Taxpayer alleged that the transactions had violated the Open Meeting Act, the Competitive Bidding Act, Anti–Fraud statutes, and the Oklahoma Constitution. The City concluded that "[a]lthough all of the allegations set forth in the 'Demands' are entirely without merit, in light of the significant risk of harm to the City and public interest by allowing the allegations to remain unchallenged, the City is seeking the Court's assistance in confirming the validity of the transactions challenged by the taxpayers." O.R. at 62–63.

¶ 10 The trial court denied Taxpayer's motion to intervene and granted the City's motion for summary judgment. Taxpayer filed a motion for new trial which was also denied. She appealed and the order of the trial court was affirmed by the Court of Civil Appeals. The appellate court concluded that Taxpayer's claims were set forth in the City's amended petition as set forth in the *qui tam* demand letter attached as an exhibit to the City's petition. Taxpayer sought and was granted certiorari to the appellate court. We also affirm the trial court, but for reason that all of the materials provided by the City to the trial court, including affidavits in support of summary judgment, show that Taxpayer's claims were fairly presented by the City.[2]

---

**1.** 62 O.S.2001 § 374: "Civil actions filed by taxpayers for the recovery of real or personal property can only be brought if the written demand upon the proper officers is made by the required resident taxpayers within two (2) years of the transfer of the property, and the civil suit is filed within six (6) months following the refusal, failure, or neglect of the proper officers to act upon the written demand."

**2.** The trial court considered both intervention and the City's motion for summary judgment at the same hearing, later revisiting intervention after summary judgment had been sustained, and appears to have considered all of the factual issues and legal arguments raised on the motion for summary judgment as part of its decision on intervention. This Court has also used the facts and law presented on both summary judgment and intervention. Of course, a public body's fair

¶ 11 Taxpayer filed a "motion to reconsider" within the ten-day limit for a motion for a new trial, and claimed that the City did not show a justiciable controversy required for judicial relief in the form of a declaratory judgment. A "motion to reconsider" *may* be deemed to be a motion for new trial if the substance of the motion may be presented by a timely motion for new trial,[3] and we construe her motion to reconsider as one for new trial asserting that the trial court's decision was contrary to law.[4] While a timely motion for new trial will extend the time to commence an appeal challenging an antecedent order which denied a motion to intervene,[5] the motion for new trial also acts to limit the issues reviewed on appeal to those raised by that motion. *Onyekuru v. Farmers, Ins. Co.*, 2000 OK 81, ¶ 4, 20 P.3d 812, 813; 12 O.S.2001 § 991(b);[6] Okla.Sup.Ct.R. 1.22(c)(1). We now address Taxpayer's assignments of error on appeal preserved by her motion for new trial.

¶ 12 Resident taxpayers of a state governmental unit may, in the name of the State of Oklahoma as plaintiff, seek *qui tam* relief under 62 O.S.2001 §§ 372 and 373[7] to

and adequate presentation of facts and law on the merits of a controversy appearing in their response when responding to a *qui tam* taxpayer's motion to intervene should also appear as facts and law on a motion for summary judgment if such a motion is filed by the public body. *Union Oil Company v. Board of Equalization*, 1996 OK 40, 913 P.2d 1330, 1334 (granting a summary judgment motion is an adjudication on the merits of a cause of action).

3. *Reeds v. Walker*, 2006 OK 43, n. 4, 157 P.3d 100, 105. *See also Halliburton Oil Producing Co. v. Grothaus*, 1998 OK 110, n. 6, 981 P.2d 1244, 1248 (a motion to reconsider may be regarded as one for new trial); *Pierson v. Canupp*, 1988 OK 47, n. 1, 754 P.2d 548, 550 (same).

4. 12 O.S.2001 § 651: "... The former verdict report, or decision shall be vacated, and a new trial granted, on application for the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party: ... 6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law;...."

5. A motion for new trial may be filed within ten days after a "judgment, decree or appealable order" is filed in the trial court. 12 O.S.2001 § 653. An order denying leave to intervene is a final order. 12 O.S.2001 Ch. 15, App. 1, Okla. Sup.Ct.R. 1.20(b)(5). A timely motion for new trial challenging a final order is a Rule 1.22 post-trial motion which allows a party to commence an appeal challenging the final order when the appeal is timely commenced after the subsequent order denying the motion for new trial. *Id.* at Okla. Sup.Ct. R. 1.22(a), (c)(1) & (3).

6. 12 O.S.2001 § 991(b): "If a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted."

7. 62 O.S. Supp.2008 § 372, as amended by Laws 2008, c. 367, § 8, eff. Nov. 1, 2008:

Every officer of the state and of any county, township, city, town or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the state or to such county, city, town or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the state or any such county, city, town or school district, by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the state, county, city, town or school district affected, for triple the amount of all such sums of money so paid, and triple the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the state or such county, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided.

62 O.S.2001 § 373:

Upon the refusal, failure, or neglect of the proper officers of the state or of any county, township, city, town, or school district, after written demand signed, verified and served upon them by ten resident taxpayers of the state or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the state, or such county, township, city, town, or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the state or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the state or such county, township, city, town, or school district affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the

recover money or property belonging to that governmental unit that was paid out or transferred illegally or without authority. *State ex rel. Trimble v. City of Moore*, 1991 OK 97, 818 P.2d 889, 894. These statutes transform a private citizen and taxpayer into a representative of the state for the purpose of protecting the governmental unit's property rights. *Id.*

¶ 13 A public body may respond to a *qui tam* demand by filing a petition for declaratory judgment proceeding in a district court and requesting a judgment that the public body's acts were legal and with authority. *State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 30, 170 P.3d 1024, 1035. Oklahoma's Uniform Declaratory Judgments Act (12 O.S.2001 §§ 1651–1657) grants the district courts the authority to determine certain rights and relationships "in cases of actual controversy." The requirements of an actual controversy are "[a]n actual, existing justiciable controversy between parties having opposing interests that are direct and substantial...." *City of Muskogee v. Martin*, 1990 OK 70, 796 P.2d 337, 343, quoting *Gordon v. Followell*, 1964 OK 74, 391 P.2d 242, 244. We explained in *State ex rel. Wright, supra*, that a public body must diligently put before the trial court the demands of the taxpayers when a public body responds to a *qui tam* demand by seeking a judicial declaration that its conduct is legal and with authority. 2007 OK 73, 170 P.3d at 1034–1038. Diligence in placing the demands before the trial court includes presenting facts to the trial court in a judicially cognizable form when the officials' conduct turns on a question of fact, and when a question of law is disputed the public body must be sufficiently informed of the nature of

that dispute. 2007 OK 73, ¶ 45, 170 P.3d at 1038.

¶ 14 In *State ex rel. Wright, supra*, we also discussed the nature of the burden on intervening *qui tam* taxpayers. We stated that they "must show the insufficiency of the declaratory judgement petition as a condition precedent to a successful intervention." 2007 OK 73, ¶ 58, 170 P.3d at 1041. The *qui tam* allegations of violations of the State of Oklahoma's Open Meeting Act, Competitive Bidding Act, anti-fraud statutes, and the common law of fraud included the following.

> Under the guise of economic development ... [a named individual and certain named entities] duped the City Council of Broken Arrow into authorizing the assumption of the developer's contractual obligations to Bass Pro Outdoor World, L.L.C., to pay for construction of the Bass Pro retail establishment in Broken Arrow, Oklahoma, and to pay the developer's debt to the Bank of America which funded the construction, in the total principal sum of $20,300,000.00.

> In so proceeding, the contractual obligations of the City were authorized by the Broken Arrow City Council in violation of the State of Oklahoma's Open Meeting Act (25 O.S.2001 §§ 307, 312), Competitive Bidding Act (61 O.S. § 101, et seq. and 62 O.S.Supp.2003 § 804) and Anti–Fraud statutes (15 O.S. §§ 58 and 59) and the common law of fraud.

Demand of taxpayers, O.R. at 652.

This demand states the fact of the assumption of certain obligations and then alleges that such violates specific provisions of law. The demand has similar allegations concerning the alleged violations of the Okla-

---

State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half (1/2) the amount of money and one-half (1/2) the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward. If all claims stated by the resident taxpayers in the written demand are determined in a court of competent jurisdiction to be frivo-

lous, the resident taxpayers who signed such demand and who are parties to the lawsuit in which such claims are determined to be frivolous shall be jointly and severally liable for all reasonable attorney fees and court costs incurred by any public officer or officers or any other person alleged in such demand to have paid out, transferred, or received any money or property belonging to the state, or such county, township, city, town or school district in pursuance of any alleged unauthorized, unlawful, fraudulent, or void claim paid or contract or conveyance made, or attempted to be made, by such officer or officers.

homa Constitution. The absence of supporting facts in the *qui tam* demand makes the allegations of violations of law conclusory in nature.[8]

¶ 15 In *State ex rel. Wright, supra,* we explained that conclusory allegations in a *qui tam* demand are insufficient, by themselves, to show that intervention by a taxpayer is proper. *State ex rel. Wright,* 2007 OK 73, ¶¶ 32, 35, 38, 170 P.3d at 1035, 1036, 1037. *See also State ex rel. Oklahoma Corp. Comm. v. McPherson,* 2010 OK 31, ¶ 16, 232 P.3d 458, 463. We pointed out that "In the *Tal* cases, the taxpayers failed to show that the facts material to the legality of the issues were not presented to the trial court for it to consider ..." and the trial court's denial of intervention was thus not reversed on appeal. *State ex rel. Wright,* at ¶ 37, 170 P.3d at 1036.[9]

 ¶ 16 On the other hand, the fact that a demand letter makes conclusory allegations does not necessarily show that a taxpayer's request for intervention is improper. Because, as we pointed out in the *Tal* cases and *State ex rel. Wright,* the diligence of the public body in placing the facts before the trial court is measured, in part, by facts raised by a taxpayer in his or her quest to intervene. *State ex rel. Wright,* at ¶ 35, 170 P.3d at 1036, discussing *Tal I.* Our inquiry must start with comparing Taxpayer's allegations of fact and conclusions of law with those made by the City to determine if the City was diligent in presenting Taxpayer's claims for adjudication.

 ¶ 17 Taxpayer alleged that the Mayor and City Council approved of indemnity agreements in secret and without public notice, without placing the agreements on the agenda of the City's meetings, and without

such agreements appearing in the meetings of the City; further, that on May 17, 2004, the City Council "at a duly called and noticed meeting, adopted a resolution taking the action the City Council had previously on December 19, 2003 and March 17, 2004, respectively, agreed to take in secret." Taxpayer argued that in December 2003 the City agreed to assume 19.5 million dollars of debt "without any notice, without it even being in the minutes ... then in March 2004 [the City] took the same action ... it would assume the debts of Mr. Roland, but also that it had an agreement with the Bank of America, or some other bank, it said to fund the 19–and–a–half–million–dollar project." She argued that this agreement had not been on the agenda for a meeting of the City Council, nor was it mentioned in the minutes of the meetings of the City Council. O.R. at 889–890. The agreements that Taxpayer challenged had been signed by the Mayor, and she argued that these facts were pled by their motion and proposed pleading. She argued that "there are clearly at least issues of fact regarding when and whether the City Council was presented with these agreements for approval and their role in the decision-making process resulting in the May 17, 2004 resolution of the City Council doing precisely what these agreements did." O.R. at 863. Taxpayer also argued that an affidavit of a City Clerk "establishes that none of these [three indemnity] agreements was referenced in the agendas or minutes of the City Council." O.R. at 862. She also pointed to an affidavit of the Mayor of the City which states that "he had no 'independent recollection of executing these documents', and that he merely relied upon the 'staff to provide me with the documentation relevant to the duties of my office and those items

---

8. A conclusory allegation is an allegation unsupported by allegation of fact, stipulation of fact, or fact of record, *Commodore Home Systems, Inc. v. Citicorp,* 1989 OK 46, 780 P.2d 674, 678, does not delineate the facts, and goes no further than to recite the pleader's reaction to, or the inference the pleader draws from undisclosed facts. *Spence v. Norick,* 1973 OK 96, 513 P.2d 1295, 1297.

9. The *"Tal* cases*"* refers to: *City of Oklahoma City v. Oklahoma City Urban Renewal Authority,*

1999 OK 71, 988 P.2d 901 (*Tal I* ); *State ex rel. Tal v. Norick,* 1999 OK 85, 991 P.2d 999 (*Tal II* ); *State ex rel. Moshe Tal. v. City of Oklahoma City,* 2000 OK 70, 19 P.3d 268, *cert. denied,* 534 U.S. 814, 122 S.Ct. 40, 151 L.Ed.2d 13 (2001) (*Tal III* ); *State ex rel. Moshe Tal v. City of Oklahoma City,* 2002 OK 97, 61 P.3d 234, (*Tal IV* ); *Oklahoma City Urban Renewal Authority v. City of Oklahoma City,* 2005 OK 2, 110 P.3d 550, 554 (*Tal V* ).

which have been approved by the Broken Arrow City Council.'" O.R. at 862.

¶ 18 During the hearing in the trial court, counsel *for the City* stated that the indemnity agreement and first supplemental indemnity agreement were signed by the Mayor, *but were a nullity.* Transcript, O.R. Vol. 7, 873, 911–912. She explained, stating that the City complied with the Open Meeting Act, but that there was "a glitch in it" because the Mayor had executed agreements when the city council had not approved of them. She argued that there was no legal problem presented by these agreements signed by the Mayor because they were null and void agreements. She also argued that an affidavit from the Finance Director stated that no money was paid out as a result of these two void agreements signed by the Mayor. The City also argued that the action of the City Council at the May 17th meeting ratified agreements that were initially unenforceable but after ratification became valid agreements. O.R. at 764–765.

¶ 19 The City also argued that the May 17th meeting of the City Council which approved the plan for the Bass Pro development project did not violate the Open Meeting Act, and any public funds spent by the City relating to the Bass Pro project resulted from this meeting and not the earlier improper actions by the Mayor. The City stated that the resolution adopted by the City agreed to the substantive provisions which had been previously agreed to by the Mayor, but that the legal force and effect of those substantive provisions resulted from the action of the City Council on May 17th and not the previous void acts of the Mayor. Taxpayer stated that one of these improper agreements was signed by the Mayor, City Manager, attested by the City Clerk, and had the legal effect of tainting the City Council's subsequent approval of the development plan at the Council's May 17th meeting. The City stated in its response to the motion to intervene that the Taxpayers had asserted as one basis for the intervention that the May 17th decision-making process on May 17th was void due to the pre–May 17th improper acts of the Mayor and City Council. In response to the motion to intervene, the City's affidavits showed that the pre–May 17th agreements at issue were never approved by the City Council either in or out of an executive session.

¶ 20 While Taxpayer argued that the City Council "met secretly" on December 19, 2003, and March 17, 2004, she did not raise any fact or legal principle showing that the procedure utilized by the City for its May 17th meeting violated a provision of the Open Meeting Act. Her proposed answer stated that the May 17th meeting was duly called and noticed. Her dispute with the City involves the legal effect, if any, from the alleged secret meetings and stipulated improper agreements prior to the May 17th meeting and the resolution adopted therein. The dispute centers on the effect of § 313 of the Open Meeting Act which provides that "Any action taken in willful violation of this act shall be invalid." 25 O.S.2001 § 313. Taxpayer argued that the legal issue was the application of *Oklahoma Association for Municipal Attorneys v. State,* 1978 OK 59, § 10, 577 P.2d 1310, and whether improper executive session discussions and unauthorized indemnity agreements "were related to the May 17, 2004 decision making process." Motion for New Trial, O.R. at 863.

¶ 21 In response to Taxpayer's allegations the City provided to the trial court copies of City Council agendas and minutes of council meetings. An affidavit of an official who attended those meetings states that the Bass Pro project was discussed "a number of times" during executive sessions, but at no time was any action taken regarding the project in those sessions. We note that the record before us shows that the City Council of Broken Arrow provided to the public agendas of its meetings which included descriptions of executive sessions. Discussions of the Bass Pro development project in those sessions was designated in the agendas by the rubric " . . . concerning possible litigation involving Albany between Elm Place and Lynn Lane (unknown *litigants v. BA* ) and its effects on area economic development proceedings, all under 25 O.S. § 307B4. . . ." See for example, Agendas of May 5 & 19,

2003, O.R. at 269, 285.[10] We agree with the trial court that the City fairly presented the facts and law relating to Taxpayer's allegations and the Open Meeting Act sufficient for the trial court to adjudicate the issues raised by the City.

¶ 22 Taxpayer's Competitive Bidding Act allegations are that the Bass Pro store was built between July 2004 and September 2005 without competitive bidding, that no competitive bidding occurred on the cost of the loan made by Bank of America to the City, and that a private individual was named in the lease and contracts to avoid the requirements of competitive bidding. Taxpayer's answer, counterclaim and cross-petition, O.R. at 682, 688. The City's response repeats Taxpayer's allegations concerning competitive bidding, and directs the trial court to examine the City's affidavits attached to its motion for summary judgment. O.R. at 748. City argued that its affidavits showed that "Bass Pro utilized a construction manager who substantially complied with the terms of the Competitive Bidding Act." *Id.* At the hearing the City argued that Bass Pro hired a construction manager and "... they took over and progressed, I mean, they competitively bid...." Hearing on Intervention and Summary Judgment, Trans. at 40. The City relied upon *McMaster Construction Inc. v. Board of Regents of Oklahoma Colleges,* 934 P.2d 335 (Okla.1997) for the proposition that a contract for a construction manager was not subject to the Competitive Bidding Act. The City also argued that Taxpayer's Competitive Bidding Act claims were time-barred.

¶ 23 Taxpayer's alleged facts appear of record in her motion to intervene, proposed answer, counterclaim, and cross-petition with accompanying documents attached as exhibits thereto. Taxpayer's allegation that competitive bidding was not performed was challenged by an affidavit attached to the City's motion for summary judgment. The affidavit is from a Project Executive for the construction company stating that "throughout the project" bidding was done "in a competitive manner" and that at "limited times" "sole-source vendors were selected." O.R. at 597.

¶ 24 *Qui tam* is not a cause of action, "but a statutory remedy for recovery of a penalty for the commission or omission by a public official of a certain act based upon particular transactions or occurrences." *Oklahoma City Urban Renewal Authority v. City of Oklahoma City,* 2005 OK 2, n. 30, 110 P.3d 550, 559. A *qui tam* plaintiff must allege and prove the payment of public funds or transfer of public property without legal authority. *State ex rel. Henricksen v. Corporation Commission,* 2001 OK 89, ¶¶ 7–9, 37 P.3d 835, 838–839; *State ex rel. Burk v. Oklahoma City,* 1973 OK 134, 522 P.2d 612, 620. When a taxpayer seeks to intervene in a public body's declaratory judgment proceeding, the burden to prove the illegal transfer of public funds or property is not imposed until *after* the taxpayer is allowed to intervene and is a party to the proceeding. *See, e.g., McCrary v. McCrary,* 1988 OK 122, 764 P.2d 522, 525 (after intervention claiming an interest in property that party then had the burden to prove its allegation of ownership).

¶ 25 The burden a taxpayer has for a merits adjudication is not the same burden that taxpayer must satisfy on intervention. The burden on intervention is to show the inadequacy of the presentation of the controversy to the court by the public body. An intervening taxpayer "must show the insufficiency of the declaratory judgment petition as a condition precedent to a successful intervention in the declaratory judgment proceeding." *State ex rel. Wright v. Oklahoma Corporation Commission,* 2007 OK 73, at ¶ 58, 170 P.3d at 1041. The dili-

---

10. Our Court of Civil Appeals has affirmed a judgment against a City in a *qui tam* action when an employment bonus payment to an employee was discussed and approved in an executive session with an insufficient agenda notice, and when there was also no official action to ratify with notice to the public of the public body's actions in that payment. *Wilson v. City of Tec-* *umseh,* 2008 OK CIV APP 84, 194 P.3d 140 (released for publication by order of the Court of Civil Appeals). Since we do not reach the merits of the issue in this appeal we need not address the holding of *Wilson,* its dicta, and jurisprudence concerning executive sessions of public bodies.

gence of the public body is not determined by an examination only of its petition for declaratory relief when the public body has amended its petition or expanded the scope of the controversy by presenting additional facts and legal argument. Our analysis in *State ex rel. Wright* explained that "we examined whether the facts and applicable law of the controversy were before the trial court for it to consider when adjudicating the merits of the controversy." *Id.* 2007 OK 73, at ¶ 32, 170 P.3d at 1035, explaining our analysis in the *Tal* cases. See also our explanation therein of *State, Bd. Com'rs Pontotoc County ex rel. Braly v. Ford,* 1941 OK 270, 116 P.2d 988, where we pointed out that the diligence of the public officials was based upon their actions "as shown by the *evidence* before the trial court." *Wright,* at ¶ 34, 170 P.3d at 1036–1037, emphasis added.

▪ ¶ 26 In our case today, Taxpayer's quest for intervention did not require her to submit an affidavit or other evidentiary substitute for the purpose of proving that competitive bidding did not occur. However, Taxpayer was required to either: (1) submit an affidavit or other evidentiary substitute *for the purpose of showing a disputed issue of fact* whether competitive bidding occurred, *and* that this disputed issue of fact showed the insufficiency of City's declaratory judgment request, *and* that intervention by Taxpayer was thus proper,[11] or (2) make a legal argument that the factual allegations of the City's affidavits were insufficient, as a matter of law, to show sufficiently for judicial adjudication that competitive bidding requirements were satisfied, *and* that Taxpayer's allegations of a lack of competitive bidding were not adequately presented by City, *and* intervention was thus required. Taxpayer did not

attempt to show the presence of an issue of fact or make a legal argument, with legal authority, that the affidavit was insufficient as a matter of law. In summary, in a declaratory judgment proceeding when a public body presents an affidavit or evidentiary substitute to show that public bidding occurred, a Taxpayer's use of a factually non-specific conclusory allegation that competitive bidding did not occur is insufficient to show a lack of diligence on the part of the public body in fairly presenting a justiciable controversy for adjudication.

▪ ¶ 27 Taxpayer's claims concerning conspiracy and fraud are based on allegations that the City and City Manager were influenced and duped by representatives from Bass Pro, a bank, and a developer concerning the true nature of the development project as a public project requiring a vote of the people. The City claims no fraud occurred because it received nineteen acres, a building, lease payments, and increased tax base for the City and a local school district. Trans. at 41. Taxpayer's claims concerning concealment are based on allegations that the pre-May 17th void agreements were not released publicly and counsel for the City improperly classified them as not subject to Open Records Act (51 O.S.2001 §§ 24A.1–24A.29) requests made by Taxpayer.[12]

¶ 28 In *Tal I* we noted that the challenged actions of the public body "were taken under the glare of public scrutiny and were resisted by a significant minority of the City Council." *Tal I,* 1999 OK 71, ¶ 20, 988 P.2d at 906. In *State ex rel. Oklahoma Corp. Commission* we noted the distinction between public contracts that are publicly debated and those which transfer public funds by alleged private and secret contracts. 2010 OK 31, ¶ 29,

---

11. Generally, a motion to intervene *may* raise issues of fact that must be adjudicated when determining whether intervention is proper. *State ex rel. Oklahoma Corp. Comm. v. McPherson,* 2010 OK 31, n. 11, 232 P.3d 458, 466. Disputed facts adjudicated on a *qui tam* taxpayer's motion for intervention are those material to the good faith of the public body in presenting facts and law to the trial court. Disputed facts material to the merits of the alleged illegal conduct of the public body's expenditure of public funds, while not adjudicated on a motion to intervene, may be material to whether the public body's presentation of the controversy is in good

faith. *Id.* at ¶¶ 18, 19, 21, 24, 26, 28, 29, 232 P.3d 458.

12. The Oklahoma Open Records Act provides a remedy in the form of a civil suit for declaratory and/or injunctive relief to a person denied access to a record of a public body or public official. 51 O.S.2001 § 24A.17. Because our review is limited to those issues raised in the new trial motion we need not address the statutory remedy, if any, Taxpayer may possess for an alleged violation of the Open Records Act.

232 P.3d at 466. Our case today has elements similar to both *Tal I* and *State ex rel. Oklahoma Corp. Comm. v. McPherson*, 2010 OK 31, 232 P.3d 458. Taxpayer views the City Council's acts at its May 17th meeting as an example of rubber-stamping a foregone conclusion that was based upon previous improper discussions of the project in executive sessions of the City Council as well as clandestine meetings of city officials, a developer, and representatives from both Bass Pro and a bank. The City views the May 17th meeting as an example of items placed on a public agenda with previous notice to the public, an opportunity for public debate, and a public body publicly adopting a public resolution.

¶ 29 Public officials using public debate and scrutiny of their acts is one measure of their good faith in making decisions involving the expenditure of public funds, and such use also reflects upon their good faith effort to diligently prosecute a judicial action determining the legality of that expenditure. *Tal I, supra,* and *State ex rel. Oklahoma Corp. Commission v. McPherson, supra.* The City provided to the trial court certified copies of the City's agendas as well as agreeing with Taxpayer that certain actions taken by the Mayor and other City officials were improper. The City is not relying upon either the challenged executive sessions or the tainted agreements signed by the Mayor for legal support and justification of their expenditure of public funds or adoption of the challenged agreements. We conclude that the City has fairly presented Taxpayer's claims on this ground.

¶ 30 Taxpayer argues the merits of the constitutional issues and challenges the summary judgment obtained by the City. A taxpayer's appeal presents only the narrow issue whether the trial court erred in denying intervention when the appeal occurs after a request to intervene is denied and the trial court grants judgment to the public body. *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 9, 61 P.3d 234, 241. The denial of intervention results in the taxpayer being excluded as a party litigant, and the taxpayer possesses no legal interest to assert by an attack upon the merits of a judgment for the public body made after the court has denied intervention. *Id.* at ¶ 9, 61 P.3d at 241 citing *Tal I,* 1999 OK 71, at ¶ 23, 988 P.2d at 906. Thus, while our discussion of the constitutional issues will not reach an ultimate conclusion whether summary judgment for the City was proper, our discussion of the constitutional issues is necessary in the context of Taxpayer's burden to show the City's failure of good-faith diligence in prosecuting the declaratory judgment action.

¶ 31 Taxpayer points to no disputed issues of fact relating to their constitutional claims, and argues that intervention is necessary for presentation of justiciable constitutional claims. For example, Taxpayer and City agree on what is stated in the various documents, but they disagree on the legality of those statements, and Taxpayer argues that this disagreement requires Taxpayer's intervention. In the *Tal* opinions the Court distinguished between "unsupported conclusions" and "facts material to the controversy that were required for the trial court to have before it to adjudicate the controversy." *Wright,* at ¶ 32, 170 P.3d at 1035. Similarly, to determine if a justiciable controversy was presented on the constitutional claims we must distinguish frivolous legal arguments, legal arguments seeking a modification of law, and legal arguments on the controlling legal precedent presented by the public body as well as a taxpayer.

¶ 32 Clearly, a lawyer is required to disclose controlling legal authority that is contrary to a position of that lawyer's client, and the City, through its lawyer, is *ethically* required to disclose to the trial court controlling authority that is contrary to the City's position.[13] Also clear is a lawyer's duty to refrain from making a frivolous legal argu-

---

**13.** A lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." 5 O.S.2001 Ch. 1, App. 3–A, Rules of Professional Conduct, Rule 3.3(a)(3), now codified at 5 O.S.Supp.2010 Ch. 1, App. 3–A, Rule 3.3(a)(2). See also *In re Application of the Oklahoma Bar Association to Amend the Oklahoma Rules of Professional Conduct,* 2007 OK 22, 171 P.3d 780, 849.

ment that lacks any rational basis in law.[14] Additionally, a public body's declaratory judgment request in response to a *qui tam* demand must be in good faith, and whether it acts in good faith is based, in part, upon its tendering for judicial review the non-frivolous applicable legal issues and arguments raised by a *qui tam* taxpayer.[15] In summary, justiciability is shown by antagonistic demands [16] that are based upon more than merely conclusory allegations or frivolous legal arguments.[17] Those antagonistic demands are presented by the City when it *fairly* presents the law to the trial court for adjudicating the substantive issues raised by a taxpayer in the *qui tam* demand, motion to intervene, and any supporting applicable legal argument and facts raised by the taxpayer.[18]

¶ 33 Taxpayer argued that the City's acts violated Okla. Const. Art. 10 §§ 19, 26, 35. The issue before us on the constitutional claims is whether the City presented the legal claims of the Taxpayer to the trial court. The City's response to Taxpayer's motion to intervene stated that Taxpayer alleged violations of §§ 19, 26, and 35, and refers therein to its previously filed motion for summary judgment. O.R. at 79, 748. We note that Taxpayer's motion for new trial contains no references to Okla. Const. Art. 10 §§ 19 and 35, and she mentions Article 10 §§ 26 and 35 in her appellate Brief-in-chief without citation of authority and argument. The gist of her Art. 10 § 26 claims is an argument that the City obligated itself to use taxes collected in future years for the debt of the development project. Her § 26 claim is based upon *State ex rel. Phillips v. Carter*, 1940 OK 97, 99 P.2d 1025, I.S.D. No. 1, *McIntosh County v. Howard*, 336 P.2d 1097, and *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, 13 P.3d 474.

¶ 34 The City presented argument to the trial court on the application of § 26 and

primarily relied upon three opinions: *In re Application of the Oklahoma Development Finance Authority*, 2004 OK 51, 94 P.3d 87; *State ex rel. Brown v. City of Warr Acres*, 1997 OK 117, 946 P.2d 1140; and *Burkhardt v. City of Enid*, 1989 OK 45, 771 P.2d 608. In *Application of the Oklahoma Development Finance Authority* the Court discussed statutory amendments after the Court's previous opinion in *Oklahoma City Urban Renewal Authority v. Medical Technology and Research Authority of Oklahoma*, 2000 OK 23, 4 P.3d 677, as well as the Court's opinion in *Matter of Application of Capitol Improvement Authority*, 1998 OK 25, 958 P.2d 759, cert. den. 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998). These opinions involved the issue of the obligation or prospect of a public entity allocating taxes to retire a debt when the taxes were to be collected in a fiscal year after the year when the obligation was *initially* created. In the former opinion we noted that a security agreement signed by the city therein provided that "the City may not become obligated to transfer money beyond its fiscal year and that therefore the covenants to transfer made by the City shall be on a year-to-year basis to be renewed by the annual appropriation for additional one-year periods on July 1 of each year until the principal and interest on all Bonds issued under the indenture have been paid or the apportionment of the increment revenue has ended." *Application of the Oklahoma Development Finance Authority*, 2004 OK 51, at ¶ 12, 94 P.3d at 92 (emphasis deleted). We stated that by this arrangement "the City has not obligated itself to transfer money beyond its fiscal year, and the covenants to transfer are on year to year basis, to be renewed by the annual appropriation for additional one-year periods on July 1 of each year. . . ." *Id.* at ¶ 22, 94 P.3d at 94.

¶ 35 In our case today, the sales tax pledge states in part that " . . . It is hereby acknowledged that under Oklahoma law, the City

---

**14.** *State ex rel. Moshe Tal v. City of Oklahoma City*, 2002 OK 97, ¶ 18, 61 P.3d 234, 244.

**15.** *State ex rel. Oklahoma Corp. Comm. v. McPherson*, at ¶¶ 26, 29, 232 P.3d at 465, 466.

**16.** *Lawrence v. Cleveland County Home Loan Authority*, 1981 OK 28, 626 P.2d 314, 315.

**17.** *State ex rel. Wright*, 2007 OK 73, at ¶¶ 32, 35, 38, 170 P.3d at 1035, 1036,1037.

**18.** *State ex rel. Oklahoma Corporation Commission v. McPherson*, at ¶ 16, 232 P.3d at 63.

may not become obligated beyond its fiscal year (July 1–June 30) and therefore the pledge of revenues and covenants made herein shall be on a year-to-year basis, but automatically renewed for additional one-year periods on July 1 of each year until such time as the principal of and interest on the Promissory Note described herein have been paid; provided, however, that notwithstanding anything herein to the contrary, by reason of the fact that the levy, collection and use of sales tax was approved at an election held for such purpose, the voters of the City retain the power to revoke the same by majority vote." O.R. at 732.

¶ 36 The City argued that it could not become obligated beyond its current fiscal year, and that its agreement had not created a created a multi-year "debt" because the pledge of revenues is based upon an annual appropriation. It argued that in the event of dire economic conditions with insufficient funds available to pay for government services, such as clean drinking water and police and fire protection, then all the parties to the Agreement understand that the City may not be able to appropriate the money. The City also argued that municipal Ordinance No. 432 authorized the sales tax revenues to be used for support of the functions of municipal government and that economic development is a function of municipal government.

¶ 37 Taxpayer relied upon *Wyatt–Doyle & Butler Engineers, Inc. v. City of Eufaula*, 2000 OK 74, 13 P.3d 474 for language therein that Art. 10 § 26 prohibits a municipality from pledging revenues and income which have not yet been provided for or collected. *Id.* at ¶ 11, 13 P.3d 474. Whether the agreements in the present case constitute the creation of a "debt" prohibited by § 26 as discussed in *Wyatt* was presented to the trial judge. However, Taxpayer has not supplied this Court with procedurally proper argument; *i.e.*, preserved by the motion for new trial and on appeal, showing a lack of diligence on the part of the City to fairly argue and explain the meaning and application of § 26 as explained by the opinions of the Court used by both the City and Taxpayer. We conclude that no reversible error on this ground is shown sufficient to reverse the denial of the motion to intervene.

¶ 38 In the trial court, the City claimed that Taxpayer's *qui tam* remedy was barred by a statute of limitations. O.R. at 749–750 Generally, a statute of limitations is an affirmative defense which a defendant must plead and prove, *Moneypenney v. Dawson*, 2006 OK 53, ¶ 2, 141 P.3d 549, 551, and a determination on a limitations issue is a determination on the merits, *State ex rel. Oklahoma Bar Association v. Busch*, 1998 OK 103, n. 24, 976 P.2d 38, 45. Since the trial court denied Taxpayer's motion to intervene, her claim on the merits was not before the trial court for adjudication, and the affirmative defense of limitations was prematurely raised by the City and prematurely adjudicated by the trial court. Since the trial court's denial of Taxpayer's motion to intervene is affirmed by our opinion herein, the trial court's decision on limitations has no effect upon our mandate affirming the trial court's order. Even assuming for the purpose of argument that the trial court committed error on the limitations defense, that assumed error is harmless and we need not address it.

¶ 39 Taxpayer argued that the City's use of a summary judgment procedure showed a lack of good faith in diligently and fairly presenting the controversy to the trial court. We have previously rejected the concept that a public body's use of a particular procedure *necessarily* shows a lack of good faith. *State ex rel. Oklahoma Corp. Comm. v. McPherson*, at ¶ 25, 232 P.3d at 465. This is not to say that procedure is unrelated to the issue of good faith in litigating the controverted issues. For example, the Court has indicated that not including the *qui tam* demands in a public body's pleadings seeking declaratory relief *may* show a lack of diligence in presenting the antagonistic demands. *See, e.g., State ex rel. Wright v. Oklahoma Corporation Commission*, 2007 OK 73, ¶ 45, 170 P.3d 1024, 1038 (merely pleading that a controversy exists without mentioning any of the facts relied on by the taxpayers in alleging an unlawful agreement does not provide the trial court with sufficient facts to identify an actual controversy to adjudicate). A judicial

procedure used by a public body in a particular circumstance may be material to the issue of good faith depending upon the nature of the controversy. Taxpayer must point to something concerning the summary judgment procedure that shows a lack of good faith in the particular circumstances.

¶ 40 In summary, in *State ex rel. Wright, supra,* we noted that the public body had not met its pleading requirement to give the trial court fair notice of the nature of the controversy raised by the demand letter. 2007 OK 73, ¶ ¶ 39–45, 170 P.3d at 1037–1038. We explained that "when the legality of officials' conduct turns on a question of fact, those facts must be before the trial court in such form that the trial court can consider them when adjudicating the merits of the petition for declaratory judgment." *Id.* at ¶ 45, 170 P.3d at 1038. In *Tal I* the taxpayers argued that the facts and law were not before the trial court. We disagreed with their assessment and explained that the taxpayers' conclusory allegations failed to show an insufficient declaratory judgment proceeding. In our case today, we have found no facts or legal argument raised by Taxpayer that were insufficiently presented by the City in its pleadings, motions, and accompanying materials. We therefore affirm the trial court's denial of Taxpayer's motion to intervene.

¶ 41 TAYLOR, C.J., COLBERT, V.C.J., WINCHESTER, EDMONDSON, REIF, COMBS, JJ.—Concur.

¶ 42 KAUGER, WATT, JJ.—Concur in result.