### LINDAUER v. HILL et al.

No. 35512.

Supreme Court of Oklahoma.

May 5, 1953.

Rehearing Denied May 19, 1953.

Application for Leave to File Second Petition for Rehearing Denied Sept. 22, 1953.

Sid White, Oklahoma City, for plaintiff in error.

Bruce & Rowan, Oklahoma City, for defendants in error.

DAVISON, Justice.

By this suit, the plaintiffs, W. A. Hill, and some eighty-nine others, sought to enjoin the defendant, Loyd Lindauer, from enclosing, and stopping the public use of, an alleged street in Oklahoma City, Oklahoma. The parties will be referred to as they appeared in the trial court, being inversely to their appearance here.

On November 22, 1905, Francis M. Jordan and his wife, Rachel M. Jordan, the owners of a tract of land on the eastern border of Oklahoma City, platted the same into lots and blocks and certified the plat thereof, dedicating the streets and alleys to public use and designating the tract as "Jordan Place Addition." In the extreme southeast corner was block numbered 14, which was some 800 feet wide, east and west, and 290 feet deep, north and south.

An alley 20 feet wide ran through the entire block dividing it into a north half and south half, each containing 32 lots 25 feet wide and 135 feet deep. The block was bounded on the north by "Eighth Street"; on the south, by "Seventh Street."

Previously, on April 22, 1903, the Jordans had platted this same addition and had certified the plat and dedicated the streets and alleys. On that first plat, running north and south between Seventh and Eighth streets at about the center of what was subsequently designated "Block 14" on the second plat, was "Beveridge Avenue." Before any lots had been sold, the Jordans executed and filed a vacation of the first or earlier plat.

On the second plat (of 1905), there was no Beveridge Avenue, and the land, which had therefore been so designated, was platted as lots 19, 20, 45 and 46 of said block 14. They comprised the piece of land here involved. On November 24, 1905, two days after the certification of the second plat, the Jordans conveyed blocks 10, 11, 12, and 14 by warranty deed to Mary A. B. Adams. On March 27, 1908, the said Mary A. B. Adams, by warranty deed, conveyed to Oklahoma City.

"Lots nineteen (19), Twenty (20), Forty Five (45) and Forty Six (46) in Block Fourteen (14) in Jordan Place Addition to Oklahoma City. Said lots are to be used for street purposes only, it being the intention of this deed to donate said lots for purposes as fully and to the same effect as if said street had been marked and designated by the original plat * * *."

By the public generally, the parcel of land described in said deed to the city was known and referred to as Wisconsin Avenue and was used as a street. On November 18, 1930, the city, by ordinance, vacated "Wisconsin Avenue from the North Line of Seventh Street to the South Line of Eighth Street." On May 24, 1938, the city executed a quitclaim deed, covering "Lots 19, 20, 45 and 46 in Block 14, Jordan Place Addition, etc." to Hattie E. Hinchee. There were also put in evidence in the trial below, other quitclaim deeds thereto to Hattie E. Hinchee, purportedly from the

heirs of the above named Mary A. B. Adams. On August 8, 1950, the said Hattie E. Hinchee executed a quitclaim deed covering said lots to the defendant herein, Loyd Lindauer. Shortly before the filing of plaintiffs' petition herein on October 12, 1951, the defendant inclosed the real estate in question by the construction of a wire fence along the boundary lines between the lots and Seventh Street, and between the lots and Eighth Street. Plaintiffs filed this suit seeking an injunction prohibiting the barricading of the alleged Wisconsin Avenue by defendant and a mandatory injunction requiring the removal of the fences already constructed. The trial court found for plaintiffs, granting the relief prayed for, from which judgment·defendant has appealed.

The original platting of the land, the original dedication of the streets and alleys and the subsequent vacation of the plat have little if any bearing on the rights of the parties here. The deed from Adams to Oklahoma City, referred to above, constituted a dedication of the lots here involved "for street purposes." "The most definite form of dedication is by a deed setting forth the exact purposes for which the land is conveyed." 16 Am.Jur. 364.

■ Defendant, in asserting his alleged right to enclose the strip of land involved, relies upon title thereto. His claim of title is founded upon conveyances from the heirs of Mary A. B. Adams and from Oklahoma City. Those from the Adams heirs were effective to convey only what title, if any, remained in the said Mary A. B. Adams after the execution and delivery of her deed of March 27, 1908, to Oklahoma City. In the case of McClain v. Oklahoma City, 192 Okl. 4, 133 P.2d 198, 200, this court held "that a clause in a deed to a municipality reciting· that the property is conveyed for street or other public purposes does. not qualify or limit the estate", citing and approving the rule contained in 47 A.L.R. 1174 note, wherein it was stated as follows:

"* * * the mere recital in a deed, or other instrument, that the land·is conveyed for cemetery purposes, does not operate as a condition subsequent for a breach of which, by use of the land for other purposes, the grantors or his heirs would be entitled to re-enter. * * *" (Citing cases from many jurisdictions.)

Thus, after the deed to the city was executed, no title or estate remained in the grantor Adams and neither defendant nor his grantors obtained anything by the subsequent conveyances from her heirs.

■ We turn now to the effect of the vacation of the street by the city and the deed executed by said City to Hinchee. Although the title held by the city was a fee title, it was not held in a proprietary capacity. "The general rule is that in the absence of a statute to the contrary the title to streets and alleys is held by the municipality in trust for the public, not in a proprietary capacity, and the municipality is without power to alienate the same." Town of Chouteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 383, 171 A.L.R. 87.

■ By section 659, 11 O.S.1941, it is provided "that whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owners or (of) real estate thereto adjacent, * * *." In construing that section of the statutes this court has consistently held that,

"Upon the vacation of a street or alley the land to the center thereof attaches to and becomes a part of adjoining lots and blocks. 11 O.S.1941 § 659. * * *" Askins v. British-American Oil Producing Co., 201 Okl. 209, 203 P.2d 877, 878.

This brings us to the conclusion that the deed from Adams to Oklahoma City conveyed the entire fee title but, because the property was conveyed for street purposes, the city became the owner in trust for the public not in a proprietary capacity. Upon vacation of the street, the land attached to the adjoining lots and the city then owned nothing which could pass by the quitclaim deed to Hinchee, even if it had authority to convey, which it did not. Therefore the defendant had no title or estate in the property, nor right to erect the barricades.

■ The city could not, by vacating the property as a street, destroy the rights of the individuals to use the same if those

rights had accrued or were inherent in the ownership of adjacent lots. The effect of the vacation of a street by a city was well described in the case of Texas Co. v. Texarkana Mach. Shops, Tex.Civ.App., 1 S.W.2d 928, 931, as follows:

"The further authority 'to vacate and (to) close' streets, as a necessary incident of control and maintenance thereof, was intended to empower the city only to relieve the public from the charge of maintaining a street in case it is no longer used by the public as a street, or is no longer useful and convenient to the public in general. The word 'close' is used in the sense of termination of maintenance, and not in the sense of preventing ingress and egress by obstructions. * * * The benefit may be either in relieving the public from the charge of maintaining a street that is no longer * * * useful or convenient to the public, or by laying out a new street in its place which will be more useful and convenient to the public in general. A street may not in any event be vacated or discontinued for the purpose of devoting it to purely private and inconsistent uses, as without the authority of the municipal corporation, as a trustee, to do. Elliott on Roads and Streets (2d. Ed.) § 875; Smith v. McDowell, 148 Ill. 51, 35 N.E. 141, 22 L.R.A. 393. The diversion of public property to private use is generally considered an abuse of power by those who are custodians of the rights of the public, rendering the act void. Van Witsen v. Gutman, 79 Md. 405, 29 A. 608, 24 L.R.A. 403; Horton v. Williams, 99 Mich. 423, 58 N.W. 369. Therefore neither the ordinance nor the conveyance from the city to appellant could legally be regarded as a license to appellant, as wholly without the authority of the city to do, to permanently occupy and obstruct the use of that portion of the street, in private injury to abutters.

"Assume, however, in another aspect of the ordinance, that the city council had the purpose and intention by the ordinance to vacate the street at all events. Section 2 seems to indicate that the city council regarded it as uncertain that the street was longer used by the public. Even so, upon passing the ordinance declaring it vacated or withdrawn from further public charge, the street would merely have reverted to the owner of the fee with the accompanying burden of abutting property. But the validity of the ordinance is affected by the exercise of the authority of the city council. The rights of abutting owners in an existing and used street may not at all events be taken away by the mere passage of an ordinance declaring it vacated. * * *"

Those statements are in harmony with the opinion of this court in the case of City of Stillwater v. Lovell, 159 Okl. 214, 15 P.2d 12.

█ The fact that defendant had had the county assessor put the property on the tax roll for a nominal amount and then had paid the taxes thereon, did not improve his position. After the street was vacated, it became accretion to, and a part of, the adjoining lots. It was "not taxable as a separate lot or parcel of real estate". Miller v. Robberson, 204 Okl. 114, 227 P.2d 654.

█ The owners of all the lots adjacent to the street were parties plaintiff. One of those, W. A. Hill, in addition to using the street in the manner the others used it, had so constructed his garage that it could not be entered without the use of the street. All the adjoining landowners suffered a special injury by defendant's barricade, but the injury to Hill was greatest in extent. In the case of Thomas v. Farrier, 179 Okl. 263, 65 P.2d 526, we stated the rule consistently followed by this court, as follows:

"The owner of land abutting upon a public highway, which is obstructed so as to cut off or materially cut off his means of ingress and egress to and from his property, held, suffers a special injury which entitles him to maintain an action to enjoin such public nuisance, notwithstanding, another highway upon which his property abuts affords him another, and equally good

or better way of ingress and egress. * * *"

Plaintiffs' right to injunctive relief was in no way prejudiced by the fact that the defendant, with the consent of the municipality, had for a number of years used the land in question or a major part of it as a parking lot during the week of the State Fair. The municipality had no authority to grant an individual any license to use "any portion of a street for any private purpose that will interfere with the legitimate public use of the street for travel notwithstanding some space is left for the passage of the public." City of Stillwater v. Lovell, supra [159 Okl. 214, 15 P.2d 13]. "Where a party is specially injured by a public nuisance and brings an action to abate the same, no lapse of time will either legalize the same or estop the injured party from bringing an action to effect its abatement." Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192, 193.

The judgment of the trial court is affirmed.

HALLEY, C. J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.