IMMEL v. TULSA PUBLIC FACILITIES AUTHORITY

Skip to Main Content
Accessibility Statement

Help
Contact Us

e-payments
Careers

Home
Courts
Decisions
Programs
News
Legal Research
Court Records
Quick Links

OSCN Found Document:IMMEL v. TULSA PUBLIC FACILITIES AUTHORITY

Previous Case

Top Of Index

This Point in Index

Citationize

Next Case

Print Only

IMMEL v. TULSA PUBLIC FACILITIES AUTHORITY2021 OK 39Case Number: 116999Decided: 06/22/2021THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 39, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

CRAIG IMMEL, TERRY YOUNG, HERB BEATTIE, and RAY PEARCEY, Plaintiffs/Appellants,
v.
TULSA PUBLIC FACILITIES, AUTHORITY, a Public Trust, and the CITY OF TULSA, OKLAHOMA, an Oklahoma Municipal Corporation, Defendants/Appellees.

ON APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY,
STATE OF OKLAHOMA
HONORABLE JEFFERSON D. SELLERS, DISTRICT JUDGE

¶0 Plaintiffs/Appellants, Craig Immel, Terry Young, Herb Beattie, and Ray Pearcey (collectively, "Taxpayers"), citizens of Tulsa County, Oklahoma, seek a declaratory judgment that Defendants/Appellees, Tulsa Public Facilities Authority (TPFA) and the City of Tulsa (City), cannot sell 8.8 acres of park land to a private developer for the construction of a commercial shopping center because the land is held in a public trust expressly as a park for the people. All parties moved for summary judgment, and the trial court granted the TPFA and the City's joint motion for summary judgment as to all claims. Taxpayers appealed, and we retained the appeal. We hold (1) Taxpayers have standing; (2) the TPFA and the City cannot sell the 8.8 acres of park land to a private developer for construction of a commercial shopping center because the land is held in a public trust for the people, unless it is abandoned and/or is no longer fit for its intended use as a public park; (3) there are disputed material facts as to whether the TPFA and the City lawfully abandoned the 8.8 acres of park land; and (4) there are disputed material facts as to whether the expenditure meets the public purpose requirement under the Oklahoma Constitution. The trial court's order granting the TPFA and the City's joint motion for summary judgment is reversed and the cause is remanded for further proceedings.

ORDER OF THE DISTRICT COURT IS REVERSED
AND REMANDED FOR FURTHER PROCEEDINGS.

D. Gregory Bledsoe, Tulsa, Oklahoma, for Appellants.

Stephan A. Wangsgard, Assistant City Attorney, and Gerald M. Bender, City Litigation Manager/Attorney, Tulsa, Oklahoma, for Tulsa Public Facilities Authority, Appellee.

David E. O'Meilia, City Attorney, and Kristina L. Gray, Senior Assistant City Attorney, Tulsa, Oklahoma, for the City of Tulsa, Appellee.

KANE, V.C.J.:

I. FACTS AND PROCEDURAL HISTORY

¶1 The issue on appeal is whether Defendants/Appellees Tulsa Public Facilities Authority (TPFA) and the City of Tulsa (City) can sell 8.8 acres of park land held in a public trust to a private developer for construction of a commercial shopping center. The 8.8 acres of park land in dispute (hereinafter "Tract A") is a small part of 67.3 total acres of unimproved land acquired by the City from the First National Bank of Oklahoma for $4.5 million in 1991. The City's acquisition of the 67.3 acres of land is the result of a public/private endeavor to purchase the riverfront property for the specific use as a city park. The City provided tax funds of $2.25 million for half of the purchase price1 and the other half of the purchase price was donated to the City by private parties,2 expressly for the purchase of the land to be used as a city park.

¶2 The City transferred the $4.5 million in funds to the TPFA so that it could be used to purchase the land from the bank. The TPFA is a public trust created pursuant to 60 O.S.2011 § 176, and the City is its sole beneficiary. Legal title to the land was also placed in the name of the TPFA.3

¶3 On June 27, 1991, the City's Park Board met and named the park "Helmerich Park" after Walter Helmerich, III, the principal private donor. Helmerich Park is a public park in Tulsa and has operated as such from 1991 to the present. From 1991 to April 2017, all 67.3 acres of Helmerich Park was operated, maintained, and managed by the City's Park Department as a public park. During this same time period, improvements were made to Helmerich Park under the supervision of the City. The improvements included: ten volley ball courts, a playground, a splash pad, a picnic area, restrooms, a parking lot, and a driveway. The improvements were ultimately made possible by private funds donated by Walter Helmerich, III; however, the City's Park Department also sought $1,175,000 in improvements specifically earmarked for Helmerich Park as part of its 2015-19 capital improvements plan.

¶4 In 2013, the City's Economic Development Director decided to try and sell or lease some of the City's unused or underutilized property in an attempt to hopefully increase sales tax revenue and generate revenue based on recommendations from an outside third party who prepared a study of the City's property. Helmerich Park was identified as a potential candidate by the outside third party's study to be leased or sold. Once identified as a potential candidate to be leased or sold, the City's Economic Development Director discovered legal title to Helmerich Park was held by the TPFA and not by the City. As a result, the City's Economic Development Director and the City's staff prepared a Request for Proposals (RFP) offering Helmerich Park for long-term lease in hopes of attracting new businesses that would lease the property and thereby increase sales tax revenue. The RFP provided that it was from both the TPFA and the City.4 Ultimately, the RFP was unsuccessful.

¶5 In 2014, a private developer became interested in a small portion of the property, specifically Tract A, which runs along the east bank of the Arkansas River, for commercial development. The City's Economic Development Director, through private negotiations, initially thought he was successful in negotiating a long-term lease for Tract A with the private developer. However, the long-term lease ultimately culminated into a contract for the purchase and sale of Tract A to the private developer for the construction of a commercial shopping center. After lengthy negotiations, the TPFA and the private developer agreed on a Purchase and Sale Contract (Contract) for Tract A on August 11, 2015, and the TPFA approved the Contract during one of its scheduled meetings. The Contract was later amended, which is the subject of this appeal. The remaining 58.5 acres of Helmerich Park was to continue to be held in trust by the TPFA for the public's use as a city park.

¶6 On August 11, 2015, Plaintiff/Appellant Craig Immel sought to prevent the sale of Tract A by seeking an injunction and a temporary restraining order against the TPFA. On January 7, 2016, Immel filed an Amended Petition to include the City of Tulsa as a necessary party/defendant. The Amended Petition also included the addition of four other Plaintiffs/Appellants: Terry Young, Herb Beattie, Clayda Stead,5 and Ray Pearcey.

¶7 On March 1, 2017, the Tulsa City Council passed two Resolutions concerning Tract A. The first Resolution provided that the City would abandon Tract A and support its sale if the TPFA and the developer would revise its contract to include terms requested by the City. The second Resolution provided up to $570,000 of the City's tax funds to be paid to the private developer for infrastructure improvements to Tract A in connection with the construction of the shopping center if the contract was revised. The TPFA and the developer revised the Purchase and Sale Contract (Amended Contract) on March 3, 2017 and the City approved the same.

¶8 On April 17, 2017, the TPFA and the City filed a motion to dismiss for lack of standing, which the trial court denied in June 2017. The TPFA and the City also filed an application to assume original jurisdiction and petition for writ of prohibition with this Court on the same grounds in Case No. 116,157. This Court denied the application to assume original jurisdiction by a unanimous vote in September 2017.

¶9 On April 24, 2017, via the trial court's consolidation order, Immel was joined by additional Plaintiffs/Appellants Terry Young, Herb Beattie, and Ray Pearcey, (collectively, "Taxpayers") who are also citizens/taxpayers of the City of Tulsa. In response to the two Resolutions passed by the City Council and the City's approval of the Amended Contract for the sale of Tract A, Taxpayers filed a supplemental pleading with the trial court requesting that they be allowed to amend their petition. The trial court granted the Taxpayers' request, and on November 1, 2017, the Taxpayers filed their Supplemental Pleading to Amended Petition seeking a declaratory judgment that the TPFA and the City: (1) cannot sell Tract A to a private developer for commercial use because the park land is held in a public trust, expressly as a park for the people; (2) tax funds would be misappropriated if the sale of the restricted park land occurred; and (3) the sales price was so low and other considerations so minimal, that it would result in an unconstitutional gift by the TPFA and the City to the private developer. Taxpayers also allege actual abandonment of Tract A of the Park has not occurred and that the $570,000 to be paid to the private developer would be an illegal expenditure.6

¶10 All parties moved for summary judgment in the trial court in January 2018. In April 2018, the trial court granted the TPFA and the City's joint motion for summary judgment as to all issues without stating the grounds to support its decision and denied the Taxpayers' motion for summary judgment. Taxpayers appealed the trial court's order granting summary judgment in favor of the TPFA and the City, and this Court granted the parties' request to retain the appeal.

II. STANDARD OF REVIEW

¶11 This Court reviews summary judgments de novo, viewing all facts and inferences presented by the evidence in the light most favorable to the nonmoving party. See Miller v. David Grace, Inc., 2009 OK 49, ¶ 10, 212 P.3d 1223, 1227. Summary judgment is appropriate when there is no genuine controversy as to any material fact, and the moving party is entitled to judgment as a matter of law. Id. On review, this Court will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. See City of Tulsa v. Bank of Okla., N.A., 2011 OK 83, ¶ 17, 280 P.3d 314, 319. This Court will reverse the grant of summary judgment when it appears from the evidentiary materials that the material facts concerning issues raised in the case are conflicting or, if the material facts are undisputed, reasonable persons in the exercise of fair and impartial judgment might reach a different conclusion from those facts. Id. We have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal rulings. Id.

III. ANALYSIS

A. Taxpayers have standing as citizens and taxpayers to bring this action in equity to challenge the prospective unauthorized expenditure of funds.

¶12 "Standing refers to a person's legal right to seek relief in a judicial forum." Fent v. Contingency Review Bd., 2007 OK 27, ¶ 7, 163 P.3d 512, 519. To establish standing a person must possess "a legally protected interest." Id. This Court has long recognized the right of a taxpayer "to seek relief in a court of equity to challenge illegal taxation or expenditure of public funds." Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57, ¶ 24, 270 P.3d 113, 125; see also Kellogg v. Sch. Dist. No. 10 of Comanche Cnty., 1903 OK 81, ¶ 28, 74 P. 110, 116 (taxpayer of municipal corporation may maintain a suit by injunction to prevent the misappropriation of the funds of the corporation, the creation of invalid debts, the levy of unauthorized taxes, and the perpetration of official wrongs); Marlow v. Sch. Dist. No. 4. Murray Cnty., 1911 OK 273, ¶ 5, 116 P. 797, 798 (taxpayer's use of an injunction is a proper remedy to prevent officers of a school district from issuing bonds in excess of the debt limit provided by the Oklahoma Constitution); Threadgill v. Peterson, 1923 OK 662, ¶ 8, 219 P. 389, 391 (taxpayer who claims an illegal judgment will impose an illegal burden upon his property is an interested party and may seek relief in equity); Okla. Pub. Emps. Ass'n v. Okla. Dep't. of Cent. Servs., 2002 OK 71, ¶ 10, 55 P.3d 1072, 1078 (taxpayers have right to seek equitable relief in a court of equity to challenge illegal taxation or illegal expenditure of public funds).

¶13 In Tulsa Industrial Authority v. City of Tulsa, 2011 OK 57, 270 P.3d 113, the taxpayers sought intervention via combined theories. See id., ¶ 4, 270 P.3d at 117. First, intervention was sought pursuant to Oklahoma's qui tam statutes. See 62 O.S.2011 §§ 372-373. The second vehicle for intervention was to seek relief in equity. See Tulsa Indus. Auth., 2011 OK 57, ¶ 4, 270 P.3d at 117. The city filed a declaratory judgment proceeding to judicially validate its expenditures of the public's money. Id. ¶ 5, at 117. In Tulsa Industrial Authority, we noted with approval our prior decision in City of Oklahoma City v. Oklahoma City Urban Renewal Authority and "concluded that a public body's request for declaratory judgment seeking judicial validation of its actions, could, in some circumstances, be a justiciable controversy." Tulsa Indus. Auth., 2011 OK 57, ¶ 10, 270 P.3d at 118-19 (emphasis added) (citing Okla. City Urban Renewal Auth., 1999 OK 71, ¶¶ 25-28, 988 P.2d 901, 907).

¶14 In Tulsa Industrial Authority, we noted that while we did not address the issue as a qui tam failure in Oklahoma City Urban Renewal Authority, the taxpayers had standing to bring the action in equity. See Tulsa Indus. Auth., 2011 OK 57, ¶ 10, 270 P.3d at 118-19. Specifically, we "indicated that justiciability was shown by the antagonistic claims (fact and law) presented by the public body" and "the fact that all parties to the declaratory judgment proceeding sought court approval does not deprive the declaratory judgment proceeding of its justiciable character when the issues presented are not feigned or collusive by those seeking to uphold the public contracts." Id. ¶¶ 11-12, at 123.

¶15 While it is true that Oklahoma's qui tam statutes, 62 O.S.2011 §§ 372-373, are the taxpayers' most commonly used procedural remedy to bring a motion to intervene to question and judicially resolve: (1) whether the public body's expenditures are lawful, and (2) whether the taxpayers' funds are used for their proper purpose, it is not always the appropriate procedural vehicle or remedy.7 For example, in Tulsa Industrial Authority we held that "a qui tam remedy may not be made on behalf of a public trust." Tulsa Indus. Auth., 2011 OK 57, ¶¶ 19, 22, 270 P.3d at 123; see 62 O.S. §§ 372-373.8 Like the Tulsa Industrial Authority (TIA), the TPFA is a public trust created pursuant to 60 O.S.2011 § 176. As a result, the Taxpayers cannot maintain a qui tam action against the TPFA, nor have the Taxpayers sought to do so. Instead the Taxpayers, like the taxpayers in Tulsa Industrial Authority, bring this action in equity to challenge the illegal expenditure of public funds via a declaratory judgment action. See Tulsa Indus. Auth., 2011 OK 57, ¶¶ 35-37, 270 P.3d at 130-31. Under Oklahoma law, taxpayers are permitted and have standing "to seek relief in a court of equity to challenge illegal taxation or illegal expenditure of public funds." Id. ¶ 24, at 125.

¶16 The TPFA and the City argue that the Taxpayers' claims are not based on the "expenditure of public funds," but merely involve the sale of real property, and therefore, Taxpayers have no equitable remedy available. The TPFA and the City contend this is an improper attempt to prematurely bring a qui tam action disguised as a declaratory judgment action, which they argue fails since the sale has not occurred. We disagree. Our case law makes it clear that a taxpayer challenging the use of public funds is not limited to a qui tam remedy, and furthermore, said taxpayer has standing and may bring an action in equity to challenge the prospective unauthorized expenditure of public funds or a prospective unauthorized act related to public funds. See id. ¶ 26, at 126.

¶17 In denying the TPFA and the City's joint motion to dismiss on jurisdictional grounds, the trial court and this Court found Taxpayers met, at the very least, their threshold burden of standing, allowing the issues to be decided by the trial court on the merits. In Tulsa Industrial Authority, this Court made clear that its decision to allow the taxpayers to intervene and to request equitable relief was limited and only went as far as holding that the taxpayers met their burden to plead a claim seeking equitable relief. See Tulsa Indus. Auth., 2011 OK 57, ¶ 44, 270 P.3d at 133. The taxpayers still had to meet their burden to prove the illegal transfer or expenditure of public funds. Id.; see also Okla. Pub. Empls. Ass'n v. Okla. Dep't. of Cent. Servs., 2002 OK 71, 55 P.3d 1072; Threadgill v. Peterson, 1923 OK 662, 219 P. 389; Kellogg v. Sch. Dist. No. 10 of Comanche Cnty., 1903 OK 81, 74 P. 110, 116.

¶18 Upon review of the underlying record on appeal, including Taxpayers' supplemental amended petition filed on November 1, 2017, asserting that the $570,000 in City funds to be paid to the private developer would be an illegal expenditure, we hold Taxpayers have standing to bring this action in equity.

B. The TPFA and the City cannot sell 8.8 acres of the Park to a private developer because the land is held in trust for the people until such time as the park land is lawfully abandoned and/or unfit for its particular purpose.

¶19 The TPFA and the City cannot sell Tract A of the Park to the private developer because the land is held in a public trust for the use and benefit of its citizens as a public park. The common law public trust doctrine is well established in Oklahoma. See State ex. rel. Remy v. Agar, 1977 OK 6, 559 P.2d 1235. In Remy, we held that it is the general rule that municipal property held in a governmental capacity, which is for public use, cannot be sold without special legislative authority unless the public use has been abandoned or the property has become unsuited for continued use. Id. ¶ 16, at 1239. Only upon a finding that the park land has been lawfully abandoned and/or unfit for its particular purpose can the City and the TPFA sell the park land. Id. This is true because the park land is held in a public trust for the use and benefit of its citizens. Id.

¶20 In City National Bank v. Incorporated Town of Kiowa, this Court recognized the principle that a municipal corporation holds property in two distinct capacities. In discussing that principle, we stated:

There is a clear distinction, recognized by practically all authorities, between property purchased and held by municipal corporations for the use of the corporation as an entity, and that purchased and held by such corporation for the public use and benefit of its citizens. In other words, its title to and power of disposition of property acquired for strictly corporate uses and purposes are different from its title to and power of disposition of property acquired for and actually dedicated to the public use of its inhabitants. As to the former class the power of the corporation to dispose of it is unquestioned. The rule is different as to the latter class. It is only when the public use has been abandoned, or the property has become unsuitable or inadequate for the purpose to which it was dedicated, that a power of disposition is recognized in the corporation.

1924 OK 898, ¶ 9, 230 P. 894, 897.

¶21 In Remy, we held that the City of Norman did not have the authority to convey public lands held in a public trust and being used as the public dump. See Remy, 1977 OK 6, ¶ 18, 559 P.2d at 1240. We concluded the taxpayers of the City of Norman were entitled to bring an action seeking recovery and quieting the title in the name of the city, the lands upon which the city dump was located. Id. The city sought to alienate the dump lands and enter into a contract with adjacent landowners. Id. ¶¶ 5-6, at 1237. We held the city's contract was an unauthorized contract and that the city dump lands clearly fell into the second class of property purchased and held by the city, i.e., it was property held for the public use and benefit of its citizens. Id. ¶ 18, at 1240. As a result, the city dump lands were held in a governmental capacity for the public use of its citizens and could not be sold without special legislative authority, unless the public use had been abandoned and/or the property has become unsuitable for its continued use. Id.

¶22 We also concluded in Remy that the city's Amended Charter and statutory provisions generally empowering the City of Norman to dispose of its property held for use of the corporation as an entity did not enable the city to dispose of land held for public use and benefit of its citizens. Id. Specifically, we held the city did not have the authority to alienate the dump by virtue of 11 O.S.1971 § 5689 or pursuant to the city's Amended Charter.10 See Remy, 1977 OK 6, ¶¶ 14-16, 18, 559 P.2d at 1239-40. In so holding, we concluded that although the city's charter provision and statutory provision granted the city the general power to dispose of property held for the use of the corporation as an entity, such general power did not enable the city to dispose of land held for the public use and benefit of its citizens, such as the dump lands in question. Id.; see also Lindauer v. Hill, 1953 OK 141, ¶¶ 8-11, 262 P.2d 697, 699; Green v. City of Norman, 1969 OK 88, ¶¶ 7- 9, 455 P.2d 58, 60 (holding title to streets created by dedication are held by the municipality in trust for the public and are not held in a proprietary capacity and the municipality is without power to alienate such title or to lease the public streets).

¶23 Both Lindauer v. Hill and Green v. City of Norman demonstrate that although a municipal corporation may have a general power to dispose of and alienate property held by it, that power is a limited one that does not enable municipal corporations to alienate property dedicated to the municipality in trust for the public. See Lindauer, 1953 OK 141, ¶ 9, 262 P.2d at 699; Green, 1969 OK 88, ¶¶ 7-9, 455 P.2d at 60. In both of these cases, the property being used was held in a governmental capacity that was dedicated for public use. See Lindauer, 1953 OK 141, ¶ 9, 262 P.2d at 699; Green, 1969 OK 88, ¶ 7, 455 P.2d at 60.

¶24 Although in Remy the record was silent as to whether the dump lands were dedicated, it was clear that the land was acquired for and used in a governmental capacity. See Remy, 1977 OK 6, ¶¶ 20-21, 559 P.2d at 1240. Because of its acquisition for and use in a governmental capacity, we held that the city did not have the power to alienate the dump lands. Id. Moreover, we held this to be so regardless of whether a dedication of the land took place. Id. ¶ 21, at 1240. The land was held and used in a governmental capacity which removed the property from the municipal corporation's general power to dispose of property. See id.

¶25 In the present case, the TPFA and the City make similar arguments concerning the City's Charter, the City's Amended Charter,11 and other statutory provisions,12 arguing that they give it the general power to sell Tract A of Helmerich Park. For the reasons cited and discussed above in Remy, Lindauer, and Green, we find this argument unpersuasive. First, the park land is held by the TPFA, a public trust, for the use and benefit of the citizens as a public park. Second, because the park land is held in a governmental capacity for use by the public, it cannot be sold without special legislative authority. It is undisputed there is no special legislative authorization empowering the TPFA and the City to sell Tract A of the Park to a private developer for commercial use.

¶26 The TPFA and the City argue that because the TPFA, and not the City, has legal title to Tract A, it can be sold to the private developer for commercial use. We disagree. In City of Tulsa v. Bank of Oklahoma, N.A., 2011 OK 83, 280 P.3d 314, we pointed out the fact that even though legal title had been transferred via a quit claim deed from the city to a public trust, the city still had an equitable interest in the land despite having transferred legal title to the public trust. See id. ¶¶ 24-26, at 322-23. The same logic applies to this case. As the City's sole beneficiary, the TPFA holds Tract A in trust for the public specifically for use as a city park and this is true despite the fact that legal title to the park land was deeded from the City to the TPFA.

¶27 Additionally, a municipal public trust cannot do something its beneficiaries cannot do, except as authorized by statute. Title 60 O.S.2011 § 176(A) provides that a municipal public trust can be created "for the furtherance and accomplishment of any authorized and proper public function or purpose of the . . . municipality." Section 176.1(B)(3) provides that: "[t]he conditions to be satisfied [for the creation of a public trust] are as follows: . . . 3. With respect to city . . . beneficiary public trusts, the function or enterprise in which the public trust is engaged or could be authorized by state law to be performed by the beneficiary . . . ." (emphasis added). This was explained by the Attorney General in Question Submitted by: The Honorable Danny Morgan, Dist. 32, 2004 OK AG 20:

A public trust may exercise no greater powers than those authorized in the documents creating it (60 O.S.2001, § 177.1), but in any event the powers of such a trust may not exceed those "authorized and proper" public functions of its municipal beneficiary (60 O.S.Supp.2003, § 176(A)), or the power which the Legislature might authorize the beneficiary to exercise. Bd. of County Comm'rs v. Warram, 285 P. 1034, 1050 (Okla. 1955); see Shipp v. Southeastern Okla. Indus. Auth., 498 P.2d 1395, 1398 (Okla. 1972).

Id. ¶ 4 (emphasis added).

¶28 In regards to municipal public trusts, the Attorney General also opines that "[t]o the extent permitted by the instrument creating the trust, a public trust may acquire, own and/or convey real and personal property, just as its municipal beneficiary may." Id. ¶ 7. Conversely, a municipal public trust cannot convey real property if its municipality cannot. It is undisputed that the legislature has not authorized municipalities to sell land held in trust for the people, except under specific statutory procedures,13 which are not applicable to the sale of Tract A of Helmerich Park. The TPFA is a municipal agency, and it is equally bound by the public trust doctrine with respect to property held in trust for the people, just as the municipality itself would be. See Remy, 1977 OK 6, ¶¶ 19-22, 559 P.2d at 1240-41.

¶29 The TPFA and the City argue that Owen v. City of Tulsa, 1910 OK 293, 111 P. 320, is applicable to this case and supports the TPFA and the City's authority to sell Tract A to the private developer. In Owen, this Court relied on a provision in the 1909 Tulsa Charter that allowed "parks" to be alienated "except in the exercise of legitimate authority" by ordinance passed by the vote of the board of county commissioners. Id. ¶¶ 7-11, at 323. In Owen, we determined that there was specific language in the 1909 Charter which provided an expressed grant of power from the state to the City of Tulsa to sell land owned by the city that had been designated as park property. See id. However, since our decision in Owen, the City of Tulsa voted and passed an amendment to their Charter in 1989. Importantly, under the Amended Charter, the City's ability to alienate "parks" was specifically and intentionally not included. Thus, the City's expressed and unequivocal "grant of power" under the 1909 City Charter to sell park property is not applicable to the facts of this case. Id. ¶¶ 5-7, at 322-23.

¶30 Moreover, and equally as important, while the specific area of park land to be sold in Owen had been designated as park property and specifically set aside for a playground, the park land had never been used as a playground. Id. ¶ 3, at 321. This is in contrast with the park lands in this case, where Helmerich Park, including Tract A, has continually been in use as a city park since 1991 and continues to this day to be in use as a city park. Thus, we find Owen v. City of Tulsa distinguishable from the facts of this case. We also agree with the Taxpayers in this case that Sharp v. City of Guthrie, 1915 OK 768, 152 P. 403, which concerned a pre-statehood federal grant of authority to sell property that had never been used as a park or public space, is likewise inapplicable to the facts of this case.

¶31 The trial court erred in granting summary judgment in this case. There is no specific statutory provision authorizing the City (or the TPFA acting on its behalf) to convey or otherwise dispose of the Park land held in such a capacity. This does not mean that Tract A of the Park or the entire Park can never be sold as the TPFA and the City argue. Instead, the burden is on the TPFA and the City to prove that Tract A of the Park has been lawfully abandoned and/or is no longer fit for its intended use as a public park. See Town of Chouteau v. Blankenship, 1944 OK 275, ¶ 11, 152 P.2d 379, 382.

C. There are disputed material facts concerning whether Tract A of the Park has been lawfully abandoned by the TPFA and the City.

¶32 As previously acknowledged, in Remy we cited with approval Board of County Commissioners v. Mullins, 1950 OK 95, 217 P.2d 835, and held that municipal property held in a governmental capacity that is for public use cannot be sold without special legislative authority unless the public use has been abandoned or the property has become unsuited for continued used. See Remy, 1977 OK 6, ¶ 16, 559 P.2d at 1239. Under Oklahoma law, "[t]o constitute abandonment in respect to property, there must be a concurrence of the intention to abandon and an actual relinquishment of the property so that it may be appropriated by the next comer." Dow v. Worley, 1926 OK 453, ¶ 26, 256 P. 56, 60 (emphasis added). In determining whether one has abandoned his property, the intention to abandon is the first and paramount object for inquiry. Id. There "can be no abandonment without the intention to abandon." Id. Because abandonment rests upon the intention to relinquish the premises, it is a question of fact for the jury. Id. ¶ 27, at 60. The TPFA and the City unquestionably have the burden of establishing abandonment. See Blankenship, 1944 OK 275, ¶ 11, 152 P.2d at 382.

¶33 In this case, there is conflicting evidence in the record concerning whether Tract A of the Park has been lawfully abandoned by the TPFA and/or the City. In support of their joint motion for summary judgment, the TPFA and the City point to the two Resolutions passed by the City Council as evidence of the City's intent to abandon Tract A. The Taxpayers argue the land was not actually relinquished and point to the fact that during the same time frame when the Resolutions were passed, Tract A and the entirety of Helmerich Park was still in use and open to the public as a city park. Taxpayers argue the TPFA and the City conceded Tract A had not been abandoned when they acknowledged Tract A was still in use as a public park in their joint motion for summary judgment. The TPFA and the City contend Tract A is abandoned. They argue it is impractical and unreasonable to erect a fence around the 8.8 acres of park land for purposes of establishing actual relinquishment of the property.

¶34 The two Resolutions passed by the City Council may be affirmative official acts by the City Council indicating the City's intention to abandon Tract A. However, they may also be viewed as an attempt by the City to validate its authority, in conjunction with the TPFA, to sell Tract A to the private developer in the first place. The City Council passed the two Resolutions approximately one year and seven months after the original Purchase and Sale Contract was approved by the TPFA in August 2015. Whether the TPFA and the City had the intent to abandon Tract A and whether there was an actual relinquishment of the property are questions for the trier of fact. See Dow, 1926 OK 453, ¶ 27, 256 P. at 60. Thus, we reverse and remand this case to the trial court for a determination on the merits as to whether Tract A has been lawfully abandoned.14

D. There are disputed material facts concerning whether the "public purpose" requirement was met.

¶35 This Court has said:

Both Sections 14 and 17 of Article X of the Oklahoma Constitution "embrace a public purpose" requirement. Section 14 restricts the use of public funds to expenditures for a public purpose. That provision's correlative limitation, section 17, was "adopted for the purpose of preventing the investment of public funds in private enterprises."

State ex rel. Brown v. City of Warr Acres, 1997 OK 117, ¶ 11, 946, P.2d 1140, 1143-44 (citing Lawrence v. Schellstede, 1960 OK 10, 348 P.2d 1078). The term "public purpose" in article X, section 14 should not be construed "in a narrow or restrictive sense." Burkhardt v. City of Enid, 1989 OK 45, ¶ 9, 771 P.2d 608, 610 (citing Helm v. Childers, 1938 OK 34, ¶ 5, 75 P.2d 398, 399). A public purpose affects the inhabitants of the state or taxing district as a community. See id.

¶36 The TPFA and the City argue that Tract A of the Park can be sold to promote economic development. In Burkhardt v. City of Enid, 1989 OK 45, 771 P.2d 608, the voters approved an economic development plan by which a public trust provided economic development by purchasing a privately-owned college campus and leasing it back to the former owners. Id. ¶¶ 5-6, at 610. This Court upheld the economic development plan under sections 14 and 17 of article X of the Oklahoma Constitution and held the plan met the public purpose requirement, thus the public funds could be expended. Id. ¶¶ 24-25, at 614. We concluded that "[e]conomic development is a legitimate public purpose for which public funds may be expended." Id. ¶ 23, at 614. As a result, a city generally has the authority to purchase property for economic development. Id. ¶ 10, at 611. However, this power is restrictive, and while a city may be flexible in structuring its plans for economic development, it must obtain adequate consideration and accountability from a private actor in exchange for the expenditure of public funds. Id. ¶ 23, at 614.

¶37 In Burkhardt, we held the economic development plan did not lose its public purpose merely because it involved a private actor. Id. ¶ 10, at 611. In reaching this conclusion, we took into account that the city maintained joint control with the university over operational capital and scholarship funds and that the plan was not a gift or loan because there was adequate consideration from the private college (private actor) in the form of direct economic benefits from the university's presence and obligations it assumed under the plan. Id. ¶¶ 11-12, at 611-12. Thus, we held Enid's plan for economic development met the public purpose requirement. Id. ¶ 24, at 614. "The City recognized the impact of Phillips [i.e., the private university] on the local economy and developed the Phillips purchase plan to constitutionally further Enid's economic development." Id.

¶38 More recently, in State ex rel. Brown v. City of Warr Acres, 1997 OK 117, 946 P.2d 1140, we addressed whether or not the city met the public purpose requirement when the city entered into an economic development plan to induce a large retailer to the city. In Brown, the Warr Acres City Council passed a resolution and determined that the proposed economic development plan would promote a legitimate public purpose by increasing sales tax revenues for the city, adding new jobs, retaining existing jobs, and promoting collateral economic growth and development. Id. ¶ 20, at 1145. Under the city's economic development plan, the city received adequate consideration. Id. ¶ 15, at 1144. Specifically, the plan induced the nation's largest retailer to build a large store on the city's best undeveloped commercial tract of land within its city limits and to lease the land from the city. Id. ¶¶ 24-25, at 1145. By the time the qui tam action was brought, sales tax collections had already greatly exceeded the projected $400,000.00 per year, additional jobs were added, and the tax base for the public school system was greatly expanded. Id. ¶¶ 20-21, at 1145. Importantly, the economic development plan also provided control to the city in the event the retailer did not exercise an option to lease the land beyond the primary term of the lease. Id. ¶ 16, at 1144. In such a scenario, all public money would revert to the city. Id. Additional safeguards for protecting the city's land were also included in the ground lease agreement itself, which generally provided that rent could not be increased nor could any amendments be passed which could adversely affect the rights of the city. Id. We held that the city developed an economic development plan that "followed the legal guideposts articulated by this Court in Burkhardt," "[met] the public purpose requirement, of article 10, of sections 14 and 17 of the Oklahoma Constitution," and served a legitimate public purpose for which public funds may be expended. Id. ¶ 25, at 1145. In reaching our conclusion, we noted that the city council is the legislative body of a city, and as such, "it is its function to determine what expenditures are designed to promote the public good and welfare" and that "[i]t is not for the courts to second guess the wisdom of the City Council in agreeing to the details of the [economic development] plan." Id. ¶¶ 17, 20, at 1144-45. We also recognized that "[t]he structure of an economic development plan must change and grow over time to reflect and respond to increased commercial competition and complexities" and that "in whatever form it takes, [it] will be upheld so long as it serves a public purpose and otherwise meets constitutional requirements." Id. ¶ 19, at 1144-45. In holding that Brown met the public purpose requirement, we concluded "the general welfare, economic stability and prosperity of the City of Warr Acres and its citizens have been served and will continue to be served by the relocation of a large retail facility [sic] within its corporate limits where it has generated approximately $650,000.00 annually in sales tax revenue." Id. ¶ 24, at 1145. We noted the sales tax revenues had allowed the city to expand the type and scope of services allowed to all citizens of the community, including enhanced public improvements, police protections, recreational facilities, and the like. Id.

¶39 In this case, Taxpayers argue that Tract A is being sold for about 20% of its market value and that the private developer will be given more than a half million dollars in tax funds for infrastructure development in violation of the public purpose requirement. Taxpayers argue that, unlike the City of Warr Acres in Brown and the City of Enid in Burkhardt, the TPFA and the City of Tulsa will not maintain control over Tract A and its operation once the contract is entered into and the commercial shopping center is built. Likewise, they argue the TPFA and the City will have no control over the future disposition of the property. In support of meeting the public purpose requirement, the TPFA and the City argue that sales taxes and employment would increase. In this case, there are clear material facts in dispute concerning whether the expenditure of the public funds in this case would meet the public purpose requirement. Thus, summary judgment is reversed and we remand to the trial court to make findings of fact to support the constitutionality of the sale of Tract A to the private developer and whether those facts support the public purpose requirement under article 10, sections 14 and 17 of the Oklahoma Constitution.

IV. CONCLUSION

¶40 Tract A is park land held in a public trust expressly for the use and benefits of its citizens as a city park. Tract A of the Park can only be sold by the TPFA and the City to a private developer for commercial use if Tract A has been lawfully abandoned and/or is no longer fit for its intended purpose as a public park. We hold there are disputed material facts as to whether: (1) Tract A of the Park was lawfully abandoned by the TPFA and the City; and (2) the public expenditure of funds to be paid to the private developer meets the public purpose requirement under the Oklahoma Constitution. Thus, we reverse summary judgment entered in favor of the TPFA and the City and remand this case for further proceedings.

ORDER OF THE DISTRICT COURT IS REVERSED
AND REMANDED FOR FURTHER PROCEEDINGS.

CONCUR: Kane, V.C.J., Kauger, Winchester, Edmondson, Combs, Gurich, and Rowe, JJ.

NOT VOTING: Darby, C.J.

FOOTNOTES

1 The City used $2.25 million from its surplus 1985 sales tax funds to pay for half of the purchase price for the park land. The sales tax funds were designated for "Park Facilities Improvements."

2 The $2.25 million the City received from private donors for half of the purchase price for the park land was placed in the City's "Park and Acquisition Fund" pursuant to ordinances adopted in May of 1991.

3 In order for the City to access surplus sales taxes from the 1985 sales tax account, two public hearings were conducted before the City Council under the "Brown Ordinance" contained in the 1985 sales tax legislation. This action was required to be done before the City Council could authorize the surplus sales taxes to be utilized for a new or different project than was approved by the voters. The Brown Ordinance makes a "solemn promise" to the citizens of Tulsa that the tax funds will never be diverted or used for projects the City Council has not approved. See generally Tulsa, Okla., Code of Ordinances tit. 43-B, § 100(A)-(B).

At the first City Council hearing held on May 7, 1991, the Council was told that the title to the park land would initially be placed with the TPFA but it would be transferred back to the City in connection with a contemplated bond issue. At the second City Council hearing held on May 16, 1991, the Council was told the park land would be deeded back to the City. The 67.3 acres of property (Helmerich Park) was never transferred back to the City nor deeded back to the City.

4 The RFP was advertised on the City's website. The TPFA did not have its own website.

5 On April 4, 2017, Plaintiff Clayda Stead filed a motion to dismiss without prejudice in the trial court which was granted. Clayda Stead did not appeal the trial court's order of April 26, 2018, and is not a party to this appeal.

6 Based on the Resolutions and the Amended Contract, the responsibility for the maintenance and operation of Tract A as a city park shifted from the City's Park Department to the TPFA in April 2017. From April 2017 forward, maintenance and operation of Tract A as a city park has been completed by the TPFA, while the remaining acreage continues to be maintained and operated as a city park by the City's Park Department. Tract A has not been transferred to the private developer, nor has the $570,000 been expended because of this pending action.

7 Oklahoma's qui tam remedy is statutory in nature. It is not a cause of action, but a statutory remedy for recovery of a penalty for the commission or omission by a public official of a certain act based upon particular transactions and circumstances. It is only proper after the taxpayers make their written demand to the public body and the public body fails to seek recovery of the money or property unlawfully paid. See Tulsa Indu. Auth. v. City of Tulsa, 2011 OK 57, ¶ 10, 270 P.3d 113, 118.

8 Because Oklahoma's qui tam statutes are penal in nature and must be strictly construed, a qui tam remedy may be sought only on behalf of those entities expressly designated by 62 O.S. § 373. A public trust and its trustees are not listed in § 373; consequently, a qui tam remedy may not be made on behalf of a public trust. See Tulsa Indu. Auth., 2011 OK 57, ¶¶ 10-11, 270 P.3d at 118-19.

9 11 O.S.1971 § 568 provided, in relevant part:

All cities governed by the provisions of this Chapter shall be bodies corporate and politic, and shall have the power . . . to sell and convey any real or personal property, owned by the city . . . to make all contracts and do all other acts in relation to the property and affairs of the city, necessary to the good government of the city . . . .

10 Article 1, Section 1 of the Amended Charter of the City of Norman, provided, in relevant part:

The inhabitants within the boundaries hereinafter defined, and their successors, are hereby created and organized as a Municipal Corporation and body politic with perpetual succession under the name 'The City of Norman,' and shall succeed to, own and possess all the property, rights, privileges, franchises, powers and immunities now belonging to the present corporation known as the City of Norman . . . and shall have the power . . . to make contracts, to take and acquire property by purchase, condemnation or otherwise, and to hold, lease, mortgage, convey or otherwise dispose of any of its property within or without the limits of said city . . .

11 The Tulsa Amended Charter Article 1, § 2 provides: "All powers of the City of Tulsa, whether express or implied, shall be exercised as provided by this amended Charter, or if not provided herein, as provided by ordinance or resolution."

12 11 O.S.2011 § 22-101(3) provides: "All incorporated municipalities shall be bodies of corporate and politic and shall have the powers to: Sell and covey any real or personal property owned by the municipality and make orders concerning the same as may be conducive to the best interests of the municipality."

13 See 11 O.S.2011 § 36-101 (title to streets, roads, and public ways within a municipality which have been dedicated and accepted by the municipal governing body are held by the municipality in trust for the public's use and enjoyment and "in the absence of a statute to the contrary, the title to streets created by dedication is held by the municipality in trust for the public, and not in a proprietary capacity, and the municipality is without power to alienate the same.").

14 We further find the TPFA and the City have not waived the affirmative defense of abandonment. While the City's Resolutions are indicia of its intent to abandon Tract A, it does not end the inquiry. See Dow v. Worley, 1926 OK 453, ¶ 26, 256 P. 56, 60.

Citationizer© Summary of Documents Citing This Document

Cite
Name
Level

None Found.

Citationizer: Table of Authority

Cite
Name
Level

Oklahoma Attorney General's Opinions
 CiteNameLevel

 2004 OK AG 20, Question Submitted by: The Honorable Danny Morgan, State Representative, District 32Cited
Oklahoma Supreme Court Cases
 CiteNameLevel

 1989 OK 45, 771 P.2d 608, 60 OBJ 785, Burkhardt v. City of EnidDiscussed at Length
 1938 OK 34, 75 P.2d 398, 181 Okla. 535, HELM v. CHILDERSDiscussed
 1915 OK 768, 152 P. 403, 49 Okla. 213, SHARP v. CITY OF GUTHRIEDiscussed
 1953 OK 141, 262 P.2d 697, LINDAUER v. HILLDiscussed at Length
 1960 OK 10, 348 P.2d 1078, LAWRENCE v. SCHELLSTEDEDiscussed
 1910 OK 293, 111 P. 320, 27 Okla. 264, OWEN v. CITY OF TULSADiscussed
 1923 OK 662, 219 P. 389, 95 Okla. 187, THREADGILL v. PETERSONDiscussed at Length
 2002 OK 71, 55 P.3d 1072, OKLAHOMA PUBLIC EMPLOYEES ASSOCIATION v. OKLAHOMA DEPT. OF CENTRAL SERVICESDiscussed at Length
 1969 OK 88, 455 P.2d 58, GREEN v. CITY OF NORMANDiscussed at Length
 1972 OK 98, 498 P.2d 1395, SHIPP v. SOUTHEASTERN OKLAHOMA INDUSTRIES AUTH.Cited
 2007 OK 27, 163 P.3d 512, FENT v. CONTINGENCY REVIEW BOARDDiscussed
 2009 OK 49, 212 P.3d 1223, MILLER v. DAVID GRACE, INC.Discussed
 1924 OK 898, 230 P. 894, 104 Okla. 161, CITY NAT. BANK OF FORT SMITH v. INCORPORATED TOWN OF KIOWADiscussed
 2011 OK 57, 270 P.3d 113, TULSA INDUSTRIAL AUTHORITY v. CITY OF TULSADiscussed at Length
 2011 OK 83, 280 P.3d 314, CITY OF TULSA v. BANK OF OKLAHOMA, N.A.Discussed at Length
 2011 OK 86, 270 P.3d 133, BOWEN v. STATE ex rel. OKLAHOMA REAL ESTATE APPRAISER BOARDCited
 1977 OK 6, 559 P.2d 1235, STATE EX REL. REMY v. AGARDiscussed at Length
 1997 OK 117, 946 P.2d 1140, 68 OBJ 3092, STATE ex rel. BROWN v. CITY OF WARR ACRESDiscussed at Length
 1926 OK 453, 256 P. 56, 126 Okla. 175, DOW v. WORLEYDiscussed at Length
 1950 OK 95, 217 P.2d 835, 202 Okla. 628, BOARD OF COUNTY COM'RS OF TULSA COUNTY v. MULLINSDiscussed
 1999 OK 71, 988 P.2d 901, 70 OBJ 2376, City of Oklahoma City v. Oklahoma City Urban Renewal AuthorityDiscussed
 1903 OK 81, 74 P. 110, 13 Okla. 285, KELLOGG v. SCHOOL DIST. NO. 10 OF COMANCHE COUNTYDiscussed at Length
 1944 OK 275, 152 P.2d 379, 194 Okla. 401, TOWN OF CHOUTEAU v. BLANKENSHIPDiscussed at Length
 1911 OK 273, 116 P. 797, 29 Okla. 304, MARLOW v. SCHOOL DIST. NO. 4Discussed
Title 11. Cities and Towns
 CiteNameLevel

 11 O.S. 22-101, Corporate Powers of MunicipalitiesCited
 11 O.S. 36-101, Powers of MunicipalitiesCited
Title 60. Property
 CiteNameLevel

 60 O.S. 176, Trusts for Benefit of State, County or Municipality - Approval - Expenditures - Bylaws - Amendments - Indebtedness - Bonds - ContractsDiscussed at Length
 60 O.S. 177.1, Limitation Upon Engaging in Activity Other Than Expressly AuthorizedCited
Title 62. Public Finance
 CiteNameLevel

 62 O.S. 373, Taxpayer May Institute Suit on Failure of OfficersCited

oscn

EMAIL: webmaster@oscn.net
Oklahoma Judicial Center
2100 N Lincoln Blvd.
Oklahoma City, OK 73105

courts

Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals
District Courts

decisions

New Decisions
Supreme Court of Oklahoma
Court of Criminal Appeals
Court of Civil Appeals

programs

The Sovereignty Symposium

Alternative Dispute Resolution
Early Settlement Mediation
Children's Court Improvement Program (CIP)
Judicial Nominating Commission
Certified Courtroom Interpreters
Certified Shorthand Reporters
Accessibility ADA

Contact Us
Careers
Accessibility ADA